# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

_____

RICKEY I. KANTER,                                    )
                                                     )
                    Plaintiff,                       )
v.                                                   )          Civil Action No.  16-cv-01121
                                                     )
LORETTA ELIZABETH LYNCH,                             )
Attorney General of the United States, and           )
BRAD SCHIMEL, Attorney General of the                )
State of Wisconsin,                                  )
                                                     )
                    Defendants.                      )
_____)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

    A.    Statutory Background ...........................................................................1

    B.    Factual Background .............................................................................3

    C.    Plaintiff's Allegations .........................................................................4

STANDARD OF REVIEW ....................................................................................5

ARGUMENT .........................................................................................................5

    A.    The Second Amendment does not require that convicted felons be permitted to possess firearms .....................................................................5

        1.    Plaintiff's felony conviction categorically excludes him from the protection of the Second Amendment ...........................................5

        2.    Section 922(g)(1), as applied to Plaintiff, satisfies any level of constitutional means-ends scrutiny .................................................9

            *a.*    *If the Second Amendment applies to all, the Court should apply intermediate scrutiny* .......................................................9

            *b.*    *The Court of Appeals and other courts have consistently held that categorical bans on the possession of firearms by non-violent and violent felons and other non-virtuous persons are constitutional and satisfy intermediate scrutiny* ................................................10

            *c.*    *Plaintiff's as-applied challenge to Section 922(g)(1) cannot succeed because the Government's enforcement of Section 922(g)(1) against him reasonably advances an important government interest* .............................................12

            *d.*    *Plaintiff is not entitled to an exemption based on his personal circumstances* ...............................................................14

CONCLUSION ......................................................................................................17

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................5

*Baer v. Lynch,*
    636 F. App'x 695 (7th Cir. 2016) ...............................................6, 10, 16

*Barrett v. United States,*
    423 U.S. 212 (1976)..................................................................................12

*Binderup v. Attorney Gen., U.S.A.,*
    2016 WL 4655736 (3d Cir. Sept. 7, 2016) ......................................9, 16

*District of Columbia v. Heller,*
    554 U.S. 570, 626 (2008)..................................................................*passim*

*Ennenga v. Starns,*
    677 F.3d 766 (7th Cir. 2012) ....................................................................4

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ............................................................10, 13

*Horsley v. Trame,*
    808 F.3d 1126 (7th Cir. 2015) ..................................................................9

*Kaemmerling v. Lappin,*
    553 F.3d 669 (D.C. Cir. 2008) ...............................................................13

*Kubiak v. City of Chicago,*
    810 F.3d 476 (7th Cir. 2012) ....................................................................5

*McDonald v. City of Chicago, Ill.,*
    561 U.S. 742 (2010)....................................................................................6

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ..................................................................13

*Nat'l Rifle Ass'n of Am., Inc. v. ATF,*
    700 F.3d 185 (5th Cir. 2012) ..............................................................7, 10

*Schall v. Martin,*
    467 U.S. 253 (1984)..................................................................................12

ii

*Schrader v. Holder*,
  704 F.3d 980 (D.C. Cir. 2013) ................................................................ 10, 12

*Small v. United States*,
  544 U.S. 385 (2005) .......................................................................................... 12

*Turner Broad. Sys. Inc. v. FCC*,
  520 U.S. 180 (1997) .......................................................................................... 10

*United States v. Chapman*,
  666 F.3d 220 (4th Cir. 2012) ......................................................................... 15

*United States v. Davis*,
  406 F. App'x 52 (7th Cir. 2010) .................................................................... 11

*United States v. Emerson*,
  270 F.3d 203 (5th Cir. 2001) ........................................................................... 8

*United States v. Everist*,
  368 F.3d 517 (5th Cir. 2004) ......................................................................... 12

*United States v. Meza-Rodriguez*,
  798 F.3d 664 (7th Cir. 2015) .................................................................. 11, 14

*United States v. Miller*,
  604 F. Supp. 2d 1162 (W.D. Tenn. 2009) .................................................. 15

*United States v. Pruess*,
  703 F.3d 242 (4th Cir. 2012) ......................................................................... 11

*United States v. Rozier*,
  598 F.3d 768 (11th Cir. 2010) ................................................................... 8, 16

*United States v. Salerno*,
  481 U.S. 739 (1987) .......................................................................................... 12

*United States v. Scroggins*,
  599 F.3d 433 (5th Cir. 2010) .................................................................. 11, 15

*United States v. Shields*,
  789 F.3d 733 (7th Cir. 2015) ......................................................................... 11

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) .................................................................. *passim*

*United States v. Tooley,*
 717 F. Supp. 2d 580 (S.D. W. Va. 2010) ................................................................. 15

*United States v. Vongxay,*
 594 F.3d 1111 (9th Cir. 2010) ................................................................ 8, 11, 16

*United States v. Weatherford,*
 471 F.2d 47 (7th Cir. 1972) .......................................................................... 12

*United States v. Williams,*
 616 F.3d 685 (7th Cir. 2010) ................................................................. 6, 10, 11

*United States v. Yancey,*
 621 F.3d 681 (7th Cir. 2010) ............................................................. 7, 11, 12, 13

## FEDERAL RULES, STATUTES & REGULATIONS

18 U.S.C. § 921(a)(20) ..................................................................................... 3
18 U.S.C. § 922(g) ..................................................................................... *passim*
18 U.S.C. § 1341 ......................................................................................... 3, 4
Fed. R. Civ. P. 12(b)(6) .............................................................................. 5, 17
Fed. R. Evid. 201(b)(2) ................................................................................... 4

## STATE RULES, STATUTES & REGULATIONS

Wis. Stat. § 941.29 ........................................................................................ 4
Wis. Stat. § 941.29(1m) ................................................................................. 3
An Act for the Speedy Trial of Criminals (Md. 1715) .................................... 8

## LEGISLATIVE MATERIALS

Act to Strengthen the Federal Firearms Act,
 Pub. L. No. 87-342, 75 Stat. 757 (1961) ...................................................... 1

Omnibus Crime Control and Safe Streets Act of 1968,
 Pub. L. No. 90-351, 82 Stat. 225 .................................................................. 2

Gun Control Act of 1968,
 Pub. L. No. 90-618, 82 Stat. 1213-14 .......................................................... 2

S. Rep. No. 88-1340 (1964) ........................................................................... 2

S. Rep. No. 89-1866 (1966) ........................................................................... 2

S. Rep. No. 90-1097 (1968) ........................................................................... 2

iv

H.R. Rep. No. 87-1202 (1961)..................................................................................... 1

114 Cong. Rec. 13,219 (1968) (statement of Sen. Tydings)....................................... 2

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II................................................................................................ 6

## FOREIGN MATERIALS

13 & 14 Car. 2, c.3 § 1 (1662) (Eng.) ...................................................................... 7

## OTHER AUTHORITIES

Bernard Schwartz, 2 The Bill of Rights: A Documentary History 62 (1971) .............................. 7

Stephen P. Halbrook, The Founders' Second Amendment 273 (2008)....................................... 8

## INTRODUCTION

Consistent case law has established that categorical bans on felony possession of firearms, such as the ban set forth in 18 U.S.C. § 922(g)(1), are constitutional on their face and as applied to felons and others convicted of serious crimes. Congress enacted Section 922(g)(1) as part of a comprehensive effort to restrict access to firearms by criminals. The Second Amendment does not restrict such regulation because the statute limits firearm ownership only by those who fall outside the Second Amendment's core right: the defense of hearth and home by *law-abiding*, responsible citizens. As a convicted felon for his activities as proprietor of a company that defrauded Medicare of hundreds of thousands of dollars of taxpayer funds, Plaintiff is not a law-abiding, responsible citizen. And even if the Second Amendment does apply to § 922(g)(1), the law is constitutional as-applied to Plaintiff because the law relates substantially to the compelling governmental interests of combating serious crime and protecting public safety. Plaintiff's claims should therefore be dismissed.

## BACKGROUND

### A. Statutory Background

In 1961, Congress amended the Federal Firearms Act of 1938, 15 U.S.C. §§ 901 *et seq*., to prohibit any person convicted of a "crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961); 18 U.S.C. § 922(g). Congress introduced the amendment as "an integral part of an anticrime legislative program" in response to the "exploding crime rate." H.R. Rep. No. 87-1202, at 2 (1961). Its purpose was to "make it more difficult for the criminal elements of our society to obtain firearms." *Id.* Following a further, multi-year inquiry that

1

included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), Congress found that "the ease" through which firearms could be obtained by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest is a significant factor in the prevalence of lawlessness and violent crime in the United States," Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 901(a)(2), 82 Stat. 225.

In this inquiry, Congress identified "a serious problem of firearms misuse in the United States," S. Rep. No. 89-1866, at 53 (1966), and a "relationship between the apparent easy availability of firearms and criminal behavior," *id*. at 3. Law enforcement officials testified to the "tragic results" of firearms misuse by persons with prior criminal convictions. S. Rep. No. 88-1340, at 12, 17-18. And statistical evidence showed "the terrible abuse and slaughter caused by virtually unrestricted access to firearms by all individuals, regardless of their backgrounds." 114 Cong. Rec. 13,219 (1968) (statement of Sen. Tydings). Aiming to "reduce the likelihood that [firearms] fall into the hands of the lawless or those who might misuse them," S. Rep. No. 89-1866, at 1, Congress included in the Gun Control Act of 1968, Pub. L. No. 90-618, § 101, 82 Stat. 1213-14, additional statutory provisions limiting firearms access by persons with "criminal background[s]." S. Rep. No. 90-1097, at 28 (1968).

These restrictions are codified at 18 U.S.C. § 922(g)(1). That provision states that "[it] shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." This prohibition does not apply to "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive

Case 2:16-cv-01121-WCG   Filed 11/10/16   Page 8 of 23   Document 24-1

firearms." *Id.* § 921(a)(20).

The state of Wisconsin has similarly imposed firearms restrictions on persons convicted of felony offenses. Under Wisconsin law, "[a] person who possesses a firearm is guilty of a Class G felony if any of the following applies: (a) The person has been convicted of a felony in this state[;] (b) The person has been convicted of a crime elsewhere that would be a felony if committed in this state." Wis. Stat. § 941.29(1m).

B. Factual Background

Plaintiff, a resident of Wisconsin, pleaded guilty in 2011 to violating 18 U.S.C. § 1341 by committing mail fraud as the owner, operator and CEO of therapeutic shoe insert company, "Dr. Comfort." Compl. ¶ 13(a), ECF No. 1. The majority of products sold by Dr. Comfort were billed to Medicare and paid for by taxpayers. *Id.* Although Medicare determined in July 2004 that Dr. Comfort's therapeutic inserts did not meet required specifications and informed the company that Medicare would not pay for these products, Dr. Comfort continued to market and sell these rejected inserts as being "Medicare Covered" and eligible for payment by Medicare. Compl. ¶ 13(g).

Dr. Comfort's malfeasance continued even after submitting revised, compliant insert samples to Medicare. After Medicare approved the revised inserts for reimbursement, Dr. Comfort reverted to distribution of the original, disapproved inserts and provided customers with instructions as to how to bill Medicare. Compl. ¶13(h). The Government eventually uncovered Dr. Comfort's fraud in March of 2006, and federal agents executed search warrants on the premises of Dr. Comfort in Mequon, Wisconsin, seizing thousands of non-compliant inserts. Compl. ¶13(l). As a result of Plaintiff's scheme, from January to March 2006 alone, Dr. Comfort received $375,000 in payment by Medicare for inserts that did not meet the required standards.

3

Compl. ¶ 13(q).

On April 11, 2011 Plaintiff was charged and pled guilty to committing felony Mail Fraud, 18 U.S.C. § 1341, a crime which carries a maximum term of imprisonment of 20 years, and a fine of $250,000.  Pl. Ex. B at 10.  Following the entry of a plea agreement, this Court sentenced Plaintiff to one year and a day of imprisonment, and imposed a fine of $50,000.  In addition, Plaintiff, Dr. Comfort, the United States, and certain private persons entered into a settlement agreement to resolve multiple *qui tam* actions and civil claims by the United States arising out of this fraud.  Def. Ex. A at 1-2.[1]  In the agreement, Plaintiff and Dr. Comfort agreed to pay $27,000,000 to the United States, and Plaintiff was excluded from conducting business with Medicare, Medicaid and all other Federal health programs for a period of fifteen (15) years.  *Id.*

C.  Plaintiff's Allegations

Plaintiff now brings one claim before this Court.  He alleges that federal and state prohibitions on the possession of firearms by felons are unconstitutional as applied.  18 U.S.C. § 922(g)(1); Wis. Stat. § 941.29.  Plaintiff avers that he "is a responsible, law-abiding American citizen," and notes personal circumstances such as the "passage of time since [his] conviction, [and] his generally law-abiding record throughout his life . . . ."  Compl. ¶ 22-23.  Plaintiff claims that due to these purported facts, the Court should declare the federal and state firearms prohibitions to be violations of the Second Amendment as they apply to him, enjoin Defendants

---

[1] The attached settlement agreement with the United States may be judicially noticed as it "can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also* FBI, "Ricko International (Doing Business as Dr. Comfort) and Former CEO Agree to Criminal and Civil Resolution of $27 Million for Health Care Fraud Charges," *available at* https://archives.fbi.gov/archives/milwaukee/press-releases/2011/mw041111.htm (visited October 17, 2016).  Taking judicial notice of the settlement does not convert the instant motion to dismiss into a motion for summary judgment. *See, e.g., Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

4

from enforcing those laws against him, and order the removal of his name from the National

Instant Criminal Background Check System as someone ineligible to purchase firearms.[2]

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), dismissal is warranted if, accepting as true all well-pleaded factual

allegations and drawing all reasonable inferences in a plaintiff's favor, the complaint fails to

"plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

speculative level." *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (brackets and

citation omitted). A court reviewing a Rule 12(b)(6) motion, however, need not accept legal

conclusions cast as factual allegations, conclusory statements, or naked assertions devoid of

further factual enhancement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## **ARGUMENT**

A. The Second Amendment does not require that convicted felons be permitted to possess firearms

Plaintiff fails to state a claim upon which relief can be granted because the challenged

law, § 922(g)(1), proscribes activity that falls outside the scope of the Second Amendment's

protections. And even if § 922(g)(1) could be subject to a Second Amendment claim, the statute

relates substantially to the compelling governmental interests in combating violent crime and

protecting public safety, and is accordingly constitutional.

1. Plaintiff's felony conviction categorically excludes him from the protection of the Second Amendment

---

[2] Of note, when a firearm purchase is attempted, the National Instant Criminal Background
Check System utilizes multiple databases to determine whether there are records which prohibit
the possession of firearms by the purchaser. Upon a determination that the individual matches to
any relevant records, the transfer of the firearm will be denied. *See* 28 CFR § 25.6.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Supreme Court has emphasized that this right "is not unlimited" and that the "core" right of the Second Amendment is the defensive use of arms by "law-abiding, responsible citizens." *Dist. of Columbia v. Heller*, 554 U.S. 570, 626, 634-35 (2008).  Although the Court in *Heller* declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 626-27.  The Court further described such "regulatory measures" as "presumptively lawful." *Id*. at 627 n.26.  Subsequently, in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010), the plurality opinion took care to "repeat those assurances" that it did "not imperil every law regulating firearms."

Applying *Heller*, the Seventh Circuit has established a two-step inquiry for analyzing Second Amendment claims, including claims challenging categorical prohibitions on the possession of a firearm.  *See Baer v. Lynch*, 636 F. App'x 695, 698 (7th Cir. 2016).  Given that "some categorical disqualifications [of firearms possession] are permissible," *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc), courts "first determine if the challenged restriction covers conduct falling within the scope of the [Second] Amendment's protection," *Baer*, 636 F. App'x at 698.  If that inquiry does not resolve the matter, then the court must determine whether the law passes muster under "some level of heightened scrutiny," typically intermediate scrutiny.  *Id*.; *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (applying "the intermediate scrutiny framework" to a Second Amendment challenge to § 922(g)(1)).

In this case, Plaintiff's claim fails at the first step. The Seventh Circuit has recognized that "*some* categorical limits [on the possession of weapons by some persons] are proper" and that such restrictions "[are] part of the original meaning" of the Second Amendment. *Skoien*, 614 F.3d at 640. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010); *cf. Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 194 (5th Cir. 2012) ("*NRA*") (explaining that, to determine whether a law impinges on the Second Amendment right, courts look to "a wide array of interpretive materials" to determine "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee"). Indeed, *Heller* itself identified the right protected by the 1689 English Declaration of Rights as "the predecessor to our Second Amendment." 554 U.S. at 593. This document provided "[t]hat the Subjects which are Protestants, may have Arms for their Defence . . . as allowed by Law," *id.*, and did not repeal the 1662 Militia Act, which authorized lieutenants of the militia to disarm "any person or persons" judged to be "dangerous to the Peace of the Kingdome." 13 & 14 Car. 2, c.3 § 1 (1662) (Eng.).

The *Heller* court further "identified, as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *Skoien*, 614 F.3d at 640 (quoting *Heller*, 554 U.S. at 603-04). "The report asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Skoien*, 614 F.3d at 640 (quoting Bernard Schwartz, 2 The Bill of Rights: A Documentary History 62, 665 (1971)). The ratifiers of the Bill of Rights did not object to the "lack of an explicit exclusion of criminals from the individual right to bear

7

arms" because this limitation was implicitly "understood." Stephen P. Halbrook, The Founders' Second Amendment 273 (2008).[3]

Numerous courts have recognized that felons are thereby excluded from the Second Amendment's coverage. *See, e.g., United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) ("[F]elons were excluded from the right to arms because they were deemed unvirtuous") (internal quotation marks omitted); *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (acknowledging the "common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens"); *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009) ("In the parlance of the republican politics of the time, these limitations were sometimes expressed as efforts to disarm the 'unvirtuous.'"); *United States v. Emerson*, 270 F.3d 203, 261 n.21 (5th Cir. 2001) (explaining that scholarly sources show that "Colonial and English societies of the eighteenth century . . . excluded . . . felons [from possessing firearms]" and "the Founders [did not] consider[] felons within the common law right to arms or intend[] to confer any such right upon them"); *see also United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (concluding that "felons are categorically different from the individuals who have a fundamental right to bear arms"); *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (holding that "statutes

---

[3] Additional commentaries and laws from the founding era establish that the right to bear arms was not extended to criminals. *See, e.g.,* Schwartz at 675 (Samuel Adams stated that the right to arms should "never [be] construed . . . to prevent the people of the United States citizens who are peaceable citizens, from keeping their own arms."); An Act for the Speedy Trial of Criminals (Md. 1715) ("[A]ny person . . . that have been convicted of the crimes aforesaid, or other crimes . . . that shall shoot, kill or hunt, or seen to carry a gun, upon any person's land . . . shall forfeit and pay one thousand pounds of tobacco.") Likewise, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Skoien*, 614 F.3d at 640.

disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment").[4]

In light of this history and practice, Plaintiff, having been convicted of a felony, is among those who historically have been "disqualified from the exercise of Second Amendment rights." *Heller*, 554 U.S. at 635. Plaintiff's claim should accordingly be dismissed at the first step.

2. Section 922(g)(1), as applied to Plaintiff, satisfies any level of constitutional means-ends scrutiny

Even if Plaintiff could assert a right under the Second Amendment, his claim still would fail under the second step of the Second Amendment inquiry.

a. *If the Second Amendment applies at all, the Court should apply intermediate scrutiny*

The level of scrutiny applicable under the Second Amendment "depend[s] on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Horsley v. Trame*, 808 F.3d 1126, 1131 (7th Cir. 2015). "Laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." *Id.* (brackets and citation omitted). Because the "core" right of the Second Amendment is the defensive use of arms by

---

[4] The Third Circuit is the only appellate court to have found § 922(g)(1) unconstitutional as applied, in that case to challengers convicted of state law misdemeanors resulting in no jail time. *Binderup v. U.S. Attorney Gen.*, No. 14-4549, 2016 WL 4655736 (3d Cir. Sept. 7, 2016) (*en banc*). However, even under Judge Ambro's opinion announcing the judgment of the court, the Government would prevail under the first step of the Second Amendment inquiry. Citing *Heller*, Judge Ambro noted that "[t]he category of 'unvirtuous citizens' [who are precluded from possessing firearms] is . . . broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent." 2016 WL 4655736, at *9. Judge Ambro's opinion outlined factors courts may take into consideration to determine the seriousness of a crime: the crime's characterization as a misdemeanor, the violent nature of the crime, the nature of the sentence, and the consistency with which other jurisdictions treat the crime as serious. *Id.* at *11-12. In this case, there can be no doubt that Plaintiff's crime of defrauding Medicare of $375,000 is a serious crime, such that he falls within the category of persons "historically excluded from the right to arms." *Id.* at *12.

9

"law-abiding, responsible citizens," *Heller*, 554 U.S. at 635, the Seventh Circuit has consistently applied intermediate scrutiny to prohibitions on the possession of firearms by criminals, *see Skoien*, 614 F.3d at 641 (holding that categorical limits on firearms possession are permissible if there is "some form of strong showing ('intermediate scrutiny,' many opinions say)"); *see also Williams*, 616 F.3d at 692 ("[W]e can examine [Plaintiff's challenge to § 922(g)(1)] using the intermediate scrutiny framework . . . ."); *Ezell v. City of Chicago*, 651 F.3d 684, 708–09 (7th Cir. 2011) (noting that intermediate scrutiny is appropriate where a claim is not made by a "law-abiding, responsible citizen" as in *Heller*).  Intermediate scrutiny likewise applies to Plaintiff's challenge in this case.

      b.   *The Court of Appeals and other courts have consistently held that categorical bans on the possession of firearms by non-violent and violent felons and other non-virtuous persons are constitutional and satisfy intermediate scrutiny.*

To satisfy intermediate scrutiny, the challenged law must advance an important government interest "by means substantially related to that objective."  *Williams*, 616 F.3d at 692-93.  In evaluating the fit between the challenged law and the government interest, courts "accord substantial deference to the [legislature's] predictive judgments."  *Turner Broad. Sys. Inc. v. FCC*, 520 U.S. 180, 195 (1997) (citation omitted).  This deference is owed to the fact that "Congress is far better equipped than the judiciary to make predictive judgements and amass and evaluate the vast amounts of data bearing upon complex and dynamic issues."  *NRA*, 700 F.3d at 210 n.21 (citation omitted).  Under intermediate scrutiny, the fit need only be "reasonable," not perfect.  *Id.* at 207; *Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013).

The Seventh Circuit has uniformly rejected Second Amendment challenges to § 922(g)(1)'s ban on the possession of firearms by felons, as well as challenges to categorical bans on other classes of persons.  *See, e.g., Baer*, 636 F. App'x at 696-99 (dismissing facial and

as-applied challenge to § 922(g)(1)); *United States v. Shields*, 789 F.3d 733 (7th Cir. 2015) (dismissing as-applied challenge by felon against § 922(g)(1)); *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015) (dismissing challenge to § 922(g)(5), which bars illegal aliens from possessing firearms); *Yancey*, 621 F.3d at 687 (dismissing challenge to § 922(g)(3), which bars drug users from possessing firearms); *Skoien*, 614 F.3d at 639-42 (dismissing challenge to § 922(g)(9)'s ban on firearm possession by persons convicted of misdemeanor crimes of domestic violence); *Williams*, 616 F.3d 685 (dismissing as-applied challenge to § 922(g)(1)); *United States v. Davis*, 406 F. App'x 52, 54 (7th Cir. 2010) (affirming that it would be "frivolous" for a convicted drug distributor to challenge § 922(g)(1)). In doing so, the Court of Appeals has explained not only that "barring felons from firearm possession is constitutional," *Yancey*, 621 F.3d at 684, but that "[k]eeping guns away from habitual drug abusers is analogous to disarming felons" and is constitutional as a "category." *Id*. at 684-85. Extending this analysis, in *Skoien*, moreover, the Seventh Circuit specifically found that a categorical "extension of the [firearms] disqualification to non-violent felons (embezzlers and tax evaders, for example) [i.e. individuals convicted of crimes similar to that of Plaintiff] is presumptively constitutional . . . ." 614 F.3d at 640.[5] This precedent forecloses Plaintiff's claim.

---

[5] Courts have repeatedly reaffirmed pre-*Heller* precedent establishing that non-violent felons within the scope of Section 922(g)(1) are permissibly barred from the possession of firearms. *See, e.g., United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (courts have "consistently upheld applications of § 922(g)(1) [] to non-violent felons"); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (explaining that, "[p]rior to *Heller*, this circuit had already recognized an individual right to bear arms, and had determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right. . . . [W]e have reaffirmed our prior jurisprudence on this point since Heller was decided."); *Vongxay*, 594 F.3d at 1116 (reaffirming pre-*Heller* precedent "declin[ing] to make a distinction between violent and non-violent felons and [holding] that § 922(g)(1) . . . was constitutional."); *Wilson v. United States*, 2006 WL 519393 at *1, 6 (M.D. Tenn. Feb. 28, 2006) (upholding Section 922(g)(1) as applied to a "previously adjudicated non-violent (mail fraud) felon").

11

c. *Plaintiff's as-applied challenge to Section 922(g)(1) cannot succeed because the Government's enforcement of Section 922(g)(1) against him reasonably advances an important government interest.*

Application of intermediate scrutiny to Plaintiff's claim demonstrates that dismissal is warranted. The government has an "obviously important" interest in curbing crime by keeping firearms from criminals.[6] *See Schrader*, 704 F.3d at 989-90. The principal objective of § 922(g)(1) is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous," *Barrett v. United States*, 423 U.S. 212, 218 (1976), or "presumptively risky," *Yancey*, 621 F.3d at 683. *See, e.g., Small v. United States*, 544 U.S. 385, 393 (2005) (observing that § 922(g)(1) was enacted to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society."). As the Fifth Circuit has explained, by excluding felons from firearms possession, § 922(g)(1) is intended to protect "the security of [] fellow citizens," an interest served "[i]rrespective of whether [the] offense was violent in nature," because "a felon has shown manifest disregard for the rights of others." *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004). Indeed, Congress explicitly amended the predecessor statute to § 922(g) to "delete the words 'crime of violence' and substitute therefor the words 'crime punishable by imprisonment for a term exceeding one year'" to ensure that the prohibition covered persons with a conviction for a non-violent felony. *United States v. Weatherford*, 471 F.2d 47, 51-52 (7th Cir. 1972) (quoting Pub. L. No. 87-342).

---

[6] Protecting public safety and combating crime are well-established compelling government interests. *See United States v. Salerno*, 481 U.S. 739, 748-50 (1987) (noting that the Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.").

The Seventh Circuit has repeatedly held that the Government need only carry a minimal burden to defend a law which does not infringe on core Second Amendment rights, that is, one which does not concern firearm use by "law-abiding, responsible citizens." *Heller*, 554 U.S. at 634-35. For instance, in *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012), the Seventh Circuit held that the Government was required to carry a substantial burden to defend a blanket ban on the carrying of firearms in public. By contrast, the court found that "the state can prevail with less evidence when, as in *Skoien*, guns are forbidden to a class of persons who present a higher than average risk of misusing a gun. And empirical evidence of a public safety concern can be dispensed with altogether when the ban is limited to obviously dangerous persons such as felons and the mentally ill." *Id.*; *see also Ezell*, 651 F.3d at 708–09 (finding that "laws restricting activity lying closer to the margins of the Second Amendment right . . . may be more easily justified").

Although under *Skoien*, the Government is not required to present empirical evidence to support the dangerousness of a convicted felon, the courts to consider such evidence have concluded that felons as a group, including nonviolent felons, present a significant risk of future violent crime. *See, e.g., Yancey*, 621 F.3d at 685 ("[M]ost felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use."); *Kaemmerling v. Lappin*, 553 F.3d 669, 683 (D.C. Cir. 2008) ("Other courts . . . have observed that nonviolent offenders not only have a higher recidivism rate than the general population, but certain groups—such as property offenders—have an even higher recidivism rate than violent offenders, and a large percentage of the crimes nonviolent recidivists later commit are violent."). Empirical evidence supports these conclusions. *See, e.g.,* Bureau of Justice Statistics, U.S. Dep't of Justice, *Recidivism of Prisoners in 30 States in 2005: Patterns*

13

*from 2005 to 2010*, at 9 (2014) (finding that 28.5% of prisoners incarcerated for a property offense were rearrested for a violent crime following release); Bureau of Justice Statistics, U.S. Dep't of Justice, *Profile of Nonviolent Offenders Exiting State Prisons*, at 4 (2004) (finding that for prisoners originally incarcerated for a nonviolent offense, 19.9% were rearrested for a violent crime, and 28.6% were rearrested for a public-order offense following release).

Applying § 922(g)(1) to Plaintiff reasonably relates to the important government objectives of crime prevention and gun safety. Plaintiff concedes that he schemed to defraud the federal government of hundreds of thousands of dollars, despite being explicitly advised by his lawyers to cease his deceptive marketing and sales practices. Plaintiff further admits that he pleaded guilty to the resulting charge of felony mail fraud, was sentenced to over a year in prison and fined $50,000. Thus, regardless of whether Plaintiff's crime was violent, "the government has a strong interest in preventing people who already have disrespected the law . . . from possessing guns," *Meza-Rodriguez*, 798 F.3d at 673, rendering application of § 922(g)(1) to Plaintiff reasonably related to Congress' intent "reduce the likelihood that [firearms] fall into the hands of the lawless." *See* S. Rep No. 89-1866, at 1. The Plaintiff remains an individual whose possession of firearms would be "contrary to the public interest" as deemed by Congress. *See Huddleston v. United States*, 415 U.S. 814, 824 (1974). Accordingly, the Court also should reject Plaintiff's as applied constitutional claim at the second step.

> d. *Plaintiff is not entitled to an exemption based on his personal circumstances*

Plaintiff does not contest that § 922(g)(1) is facially valid. He nevertheless asserts that "[o]n account of [his] unique personal circumstances . . . it is unconstitutional to apply against [Plaintiff], personally . . . 18 U.S.C. § 922(g)(1)." Compl. ¶ 23. As a matter of law, however, Plaintiff is not entitled to any special treatment, regardless of his personal circumstances.

Plaintiff essentially attempts to add a third step to the two-step framework employed by the Seventh Circuit to evaluate challenges to § 922(g). He claims that, even if the statute is constitutional as applied to certain felons, all other "responsible" felons are entitled to assert a constitutional objection and have a federal court review application of the statute based on facts specific to that person. But, as the Seventh Circuit and numerous other courts have recognized, intermediate scrutiny does not require the government to show that each individual encompassed within a statutory proscription poses a particular danger. *See Skoien*, 614 F.3d at 641 ("Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court."); *see also United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012) ("[T]he prohibitory net cast by [the statute] may be somewhat over-inclusive given that not every person who falls within it would misuse a firearm . . . if permitted to possess one," but "[t]his point does not undermine the [statute's] constitutionality . . . because it merely suggests that the fit is not a perfect one[] [and] a reasonable fit is all that is required under intermediate scrutiny."); *Scroggins*, 599 F.3d at 451 (rejecting the defendant's contention that "his conviction for possession of firearms by a felon, without any further showing of violent intent, violates his Second Amendment rights"); *United States v. Tooley*, 717 F. Supp. 2d 580, 597 (S.D. W. Va. 2010) ("Section 922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant who loses his or her right to keep and bear arms would have misused them against a domestic partner or other family member. Under intermediate scrutiny, however, the fit does not need to be perfect, but only be reasonably tailored in proportion to the important interest it attempts to further. As such, intermediate scrutiny tolerates laws that are somewhat overinclusive."), *aff'd*, 468 F. App'x 357 (4th Cir. 2012); *United States v. Miller*, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009)

("Although prohibiting gun possession by nearly all felons might not be the most precisely focused means to achieve this end, intermediate scrutiny, by definition, permits Congress to paint with a broader brush.").

The Seventh Circuit has never suggested that courts must conduct a case-by-case inquiry into the personal circumstances of any felon who believes that he or she personally is "responsible" and therefore entitled to an exception from the federal felon in- possession ban. In fact, it has explicitly held the opposite. *See Skoien*, 614 F.3d at 641 ("Categorical limits on the possession of firearms would not be a constitutional anomaly."); *Baer*, 636 Fed. Appx. at 697 n.1 (rejecting plaintiff's proposal of individualized determinations because "Congress has already spoken"). Congress reasonably decided to premise a firearms disability on the seriousness of the underlying crime, not on the relative sympathy attached to individual defendants or the amount of time that has passed since their conviction, and a felony conviction alone is sufficient for Congress to determine that a person should be prohibited from possessing firearms. *See Vongxay*, 594 F.3d at 1118 (holding that "§ 922(g)(1) does not violate the Second Amendment as it applies to [the defendant], a convicted felon," without considering the defendant's personal circumstances); *Rozier*, 598 F.3d at 771 (same).[7] Accordingly, regardless of Plaintiff's personal circumstances, and in keeping with Seventh Circuit case law construing § 922(g)(1), Plaintiff's claim should be dismissed as a matter of law.

---

[7] The seven-judge dissent in the Third Circuit's decision in *Binderup* took note of the extraordinary and difficult administrative problems with addressing as-applied constitutional challenges on an individualized basis, especially if an individual's right to bear arms may change as time passes. *See* 2016 WL 4655736, at *58-59 (questioning whether a certain passage of years would render application of § 922(g)(1) unconstitutional, and whether crimes such as "drug possession with intent to distribute, human trafficking, extortion or RICO violations" would support application of the statute, if individualized challenges are heard) (Fuentes, J., dissenting).

16

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6).