IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

RICKEY I. KANTER,

       Plaintiff,

    v.                            Case No. 16CV1121

LORETTA ELIZABETH LYNCH,

and

BRAD D. SCHIMEL,

       Defendants.

## BRIEF IN SUPPORT OF WISCONSIN ATTORNEY GENERAL BRAD D. SCHIMEL'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................1

BACKGROUND ..................................................................................2

    I.    Wisconsin prohibits all felons from possessing firearms under Wis. Stat. § 941.29. .................................................2

    II.    Kanter served over a year of prison time for his felony mail fraud conviction and now wants to possess a firearm. ...................4

LEGAL STANDARD ...........................................................................7

ARGUMENT .......................................................................................7

    I.    Applying Wis. Stat. § 941.29 to felons, even non-violent ones, does not implicate the Second Amendment. .........................8

        A.    The Second Amendment does not protect felons...................8

        B.    Non-violent felons lack Second Amendment rights, just like violent felons..........................................................12

            1.    Non-violent felons cannot rebut *Heller*'s presumption that they lack Second Amendment rights............................................................12

            2.    The Third Circuit's decision in *Binderup* does not mean that Kanter has Second Amendment rights............................................................16

    II.    Even if non-violent felons enjoy some Second Amendment rights, Wis. Stat. § 941.29 withstands constitutional scrutiny...........................................................................19

        A.    Wisconsin's law satisfies intermediate scrutiny because prohibiting non-violent felons from possessing firearms reduces the risk of firearms violence. ...................................................................19

B.    Heightened scrutiny does not require considering whether Kanter will likely misuse firearms in the future. ...................................................................23

CONCLUSION ................................................................................26

## INTRODUCTION

In 2011, Plaintiff Ricky Kanter pleaded guilty to felony mail fraud. He served over a year in prison for this federal crime. Under Wisconsin law, Wis. Stat. § 941.29, felons like Kanter may not possess firearms. Federal law also prohibits felons from possessing firearms under 18 U.S.C. § 922(g)(1). Kanter challenges both statutes under the Second Amendment.

His claim fails because the supreme court affirmed the presumptive validity of such laws in *District of Columbia v. Heller*, emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. 570, 626 & n.26 (2008). Since *Heller* (and even before it), courts of appeals, including the Seventh Circuit, have uniformly held that such bans are constitutional as applied to felons. *See, e.g.*, *United States v. Williams*, 616 F.3d 685, 693–94 (7th Cir. 2010); *Baer v. Lynch*, 636 F. App'x 695, 698–99 (7th Cir. 2016).

Despite this unanimous precedent, Kanter, an admitted felon, now seeks to possess a firearm. He contends that his felony did not involve violence, and thus that Wisconsin's felon-in-possession law is unconstitutional as applied to him. But *Heller* refused to "cast doubt" on felon-in-possession laws, period, not only those laws as applied to violent felons. Indeed, the Seventh Circuit has noted that "exten[ding] . . . the [firearms] disqualification to non-violent felons (embezzlers and tax evaders, for example) is

presumptively constitutional, as *Heller* said . . . ." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). And other courts of appeals have expressly held that applying a "felon-in-possession prohibition to allegedly non-violent felons . . . does not violate the Second Amendment." *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012).

This Court should reach the same result under either step of the Seventh Circuit's test for Second Amendment claims. *See Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir. 2011). First, all felons lack Second Amendment rights, whether or not their felony involved violence, and so Wis. Stat. § 941.29 does not intrude on the Second Amendment. *See Heller*, 554 U.S. at 635 (the Second Amendment protects "the right of law-abiding, responsible citizens to use arms"). Second, even if non-violent felons did enjoy Second Amendment rights, barring them from possessing firearms survives heightened scrutiny. Wisconsin has a strong interest in preventing firearms violence, and prohibiting possession by violent and non-violent felons alike sufficiently advances that interest. Kanter's claim fails at both steps.

2

# BACKGROUND

## I. Wisconsin prohibits all felons from possessing firearms under Wis. Stat. § 941.29.

Since 1982, Wisconsin has prohibited all convicted felons from possessing firearms. Wis. Stat. § 941.29; *State v. Thomas*, 2004 WI App 115, ¶ 5, 274 Wis. 2d 513, 683 N.W.2d 497. Wisconsin's legislature passed this statute for a simple reason: It had "determined as a matter of public safety that it was desirable to keep weapons out of the hands of individuals who had committed felonies." *Thomas*, 683 N.W.2d 497, ¶ 23. This prohibition protected public safety because, as the legislature concluded, "felons are more likely to misuse firearms." *State v. Coleman*, 206 Wis. 2d 199, 210, 556 N.W.2d 701 (1996). Although not all felons will misuse firearms, Wisconsin's law "struck a balance between the possibility of a harsh result to an individual felon and the greater good of protecting the public from felons with firearms." *State v. Black*, 2001 WI 31, ¶ 19, 242 Wis. 2d 126, 624 N.W.2d 363.

Wisconsin's statute does not distinguish between different kinds of felons. All felons face criminal penalties under the statute for possessing firearms: "A person who possesses a firearm is guilty of a . . . felony if . . . [t]he person has been convicted of a felony in this state." Wis. Stat.

§ 941.29(1m)(a).[1] Of course, this means that the statute prohibits both violent and non-violent felons from possessing firearms. Again, Wisconsin's legislature determined that "felons"—all felons, not just violent ones—"are more likely to misuse firearms." *Coleman*, 206 Wis. 2d at 210.

Wisconsin state courts have repeatedly held that Wis. Stat. § 941.29 is constitutional. They have affirmed the statute's validity as applied to both violent and non-violent felons under the state constitution's right to bear arms, before *Heller*. *See Thomas*, 683 N.W.2d 497, ¶¶ 5–12, 30–36. And they have reaffirmed its validity after *Heller* as applied to both violent and non-violent felons under the federal constitution. *See State v. Pocian*, 2012 WI App 58, ¶¶ 7–15, 341 Wis. 2d 380, 814 N.W.2d 894. Likewise, the Seventh Circuit has upheld Wisconsin's statute as applied to violent felons. *See Williams*, 616 F.3d at 693–94; *Baer*, 636 F. App'x at 698.

Wisconsin's felon-in-possession ban mirrors the one under federal law in all respects material to this case. *Compare* Wis. Stat. § 941.29, *with* 18 U.S.C. § 922(g)(1).

---

[1] The statute also applies to people convicted of out-of-state crimes that would be felonies in Wisconsin. Wis. Stat. § 941.29(1m)(b).

## II. Kanter served over a year of prison time for his felony mail fraud conviction and now wants to possess a firearm.

Kanter pled guilty to one count of felony mail fraud on May 24, 2011. (Compl. ¶ 9.) In short, he lied about whether therapeutic shoe inserts his company, Dr. Comfort, sold complied with Medicare standards. His ruse defrauded the federal government and taxpayers out of significant Medicare payments made for the shoe inserts.

In 2004, Dr. Comfort sent a sample shoe insert to Medicare so it could be tested for compliance with Medicare standards; the sample failed the tests. (Compl. ¶ 13(f).) Dr. Comfort then submitted a revised design which Medicare approved, but the company continued to sell the original version that Medicare had rejected. (Compl. ¶ 13(g).) For years, Dr. Comfort sold the non-compliant shoe inserts, falsely representing that they were "Medicare Covered" and eligible for Medicare payments. (Compl. ¶¶ 13(g)–(k).) Even though Dr. Comfort's chief operating officer and its lawyers specifically advised Kanter to stop selling the non-compliant inserts, he continued to do so. (Compl. ¶¶ 13(j)–(k).) The scheme continued until federal agents raided Dr. Comfort in March 2006. (Compl. ¶ 13(l).) Before Kanter's fraudulent scheme was discovered, Dr. Comfort received around $375,000 for inserts that were improperly billed to and paid for by Medicare. (Compl. ¶ 13(q).)

Kanter pleaded guilty to mail fraud under 18 U.S.C. § 1341, a conviction carrying with it a maximum penalty of 20 years in prison, a

$250,000 fine, or both—a Class C felony under federal law. 18 U.S.C. §§ 3559(a)(3), 3571(b)(3). The court sentenced Kanter to prison time of one year plus one day and imposed a $50,000 fine. (Compl. ¶¶ 10–11.) Kanter served his entire prison sentence and paid the fine. (Compl. ¶¶ 10–11.)

Now, Kanter alleges that he "desires and intends to possess a firearm for legal purposes." (Compl. ¶ 18.) But he has purportedly refrained from doing so for fear that Wisconsin or the federal government will enforce their felon-in-possession laws against him. (Compl. ¶¶ 19–20.) He filed this action for injunctive and declaratory relief, contending that under the Second Amendment "it is unconstitutional to apply against Mr. Kanter, personally, the firearms prohibitions of 18 U.S.C. § 922(g)(1) and Wisconsin Statutes section 941.29." (Compl. ¶ 23.)

## LEGAL STANDARD

Any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c). The legal standard for resolving a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion to dismiss—the only difference is that a Rule 12(c) motion is filed after a defendant has answered the complaint. *N. Ind. Gun & Outdoor v. City of South Bend*, 163 F.3d 449, 452 & n.3 (7th Cir. 1998). Since Attorney General Schimel has already answered Kanter's complaint, he moves under Rule 12(c) rather than Rule 12(b)(6).

The motion should be granted if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* at 452 (citation omitted). This Court must accept as true the allegations of the non-moving party, view the facts in the light most favorable to the non-moving party, and draw all inferences in favor of the non-moving party. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). But this Court need not assign any weight to unsupported conclusions of law in the complaint. *N. Ind.*, 163 F.3d at 452.

## ARGUMENT

Wisconsin Stat. § 941.29 survives scrutiny under both steps of the Seventh Circuit's Second Amendment test, and so Kanter's challenge to Wisconsin's law should be dismissed. Felons are not law-abiding citizens—whether or not their felony involved violence—and thus none of them enjoy Second Amendment protections, consistent with *Heller* and as many courts of appeals have held. But even if the Second Amendment does give some rights to felons, Wisconsin's strong interest in preventing firearms violence justifies barring even non-violent felons from possessing firearms.

7

## I. Applying Wis. Stat. § 941.29 to felons, even non-violent ones, does not implicate the Second Amendment.

Kanter's claim cannot survive the Seventh Circuit's "threshold inquiry," which asks whether "the restricted activity [is] protected by the Second Amendment in the first place?" *Ezell*, 651 F.3d at 701. *See also Baer*, 636 F. App'x at 698 ("Typically when evaluating a Second Amendment claim, we first determine if the challenged restriction covers conduct falling within the scope of the Amendment's protection."). Since Kanter is a felon, barring him from possessing firearms does not intrude on any Second Amendment rights.

### A. The Second Amendment does not protect felons.

Supreme Court, courts of appeals, and historical precedent all show that the Second Amendment does not protect felons, violent or otherwise.

The supreme court recognized in *Heller* why felon-in-possession laws like Wisconsin's are constitutional: "Like most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Second Amendment protects the right of "*law-abiding*, responsible citizens to use arms in defense of hearth and home." *Id.* at 635 (emphasis added). Felons, by definition, are not "law-abiding" citizens. The supreme court thus identified felon-in-possession laws as "presumptively lawful," noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the

Case 2:16-cv-01121-WCG   Filed 11/11/16   Page 11 of 29   Document 26

possession of firearms by felons . . . ." *Id.* at 626–27 & 627 n.26. And the supreme court "repeat[ed] those assurances" in *McDonald v. City of Chicago*, emphasizing that "[w]e made it clear in *Heller*" that felon-in-possession bans are not in constitutional doubt. 561 U.S. 742, 786 (2010).

The supreme court did not confine its comments to "violent felons"—it instead indicated that *all* felons, whether violent or not, fall outside the Second Amendment's protections. *See Heller*, 554 U.S. at 626–27, 627 n.26; *McDonald*, 561 U.S. at 786. This makes sense, since non-violent felons fail the "law-abiding, responsible citizens" test just like violent felons. *Heller*, 554 U.S. at 635. The Seventh Circuit also reads *Heller* this way, explaining that "[i]f such a recent extension of the [firearms] disqualification to non-violent felons (embezzlers and tax evaders, for example) is presumptively constitutional, as *Heller* said in note 26, it is difficult to condemn [the federal ban on firearm possession by domestic violence misdemeanants]." *Skoien*, 614 F.3d at 640.

To be sure, the Seventh Circuit has not yet expressly resolved whether felons enjoy any Second Amendment protections. *See Williams*, 616 F.3d at 692; *Baer*, 636 F. App'x at 698. But it has noted that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir.

Case 2:16-cv-01121-WCG   Filed 11/11/16   Page 12 of 29   Document 26

2010). And it recognized, as did *Heller* itself, that a "'highly influential' 'precursor' to the Second Amendment . . . . asserted that citizens have a personal right to bear arms unless for crimes committed, or real danger of public injury.'" *Skoien*, 614 F.3d at 640 (citations omitted).

Other historical context underscores that felons disqualify themselves from Second Amendment rights. Many founding-era state constitutions also did not "extend [the right to bear arms] to persons convicted of crime." *Id.* Likewise, Second Amendment scholars conclude that "[f]elons simply did not fall within the benefits of the common law right to possess arms." Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204 (1983). *See also* Glenn H. Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461 (1995) ("[F]elons . . . were excluded from the right to arms precisely as (and for the same reasons) they were excluded from the franchise . . . .").

Consistent with *Heller*, *Yancey*, *Skoien*, and this historical evidence, other courts of appeal have taken the next logical step and found that felons do not enjoy Second Amendment rights. *See, e.g.*, *United States v. Carpio–Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) ("[F]elons were 'excluded from the right to arms' because they were deemed unvirtuous.") (citation omitted); *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) ("[T]he right to bear arms does not preclude laws disarming . . . unvirtuous citizens (i.e.,

10

criminals).") (citation omitted); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) ("Irrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others. He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens."); *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) ("*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically *limited* in the case of felon prohibitions.").

Along with *Heller* and *McDonald*, these persuasive decisions show that Wisconsin's felon-in-possession law is constitutional. Simply put, Kanter committed a felony, and this disregard for the law disqualifies him from Second Amendment rights.

## B. Non-violent felons lack Second Amendment rights, just like violent felons.

Kanter concedes that he is a felon and thus that prohibiting him from possessing firearms is presumptively constitutional. (Compl. ¶ 17); *Heller*, 554 U.S. at 626–27, 626 n.26. Yet he contends that, because he committed mail fraud rather than a violent felony, Wisconsin's felon-in-possession law is unconstitutional as applied to him. The Seventh Circuit has not yet shut the door on such a challenge. *See Baer*, 636 Fed. App'x. at 697 ("We have left open the possibility that a felon might be able to rebut [*Heller*'s] presumption by

showing that a ban on possession is overbroad as applied to him.").[2] But the best reading of *Heller* provides no Second Amendment rights to non-violent felons, as many courts of appeals have concluded. Even following the Third Circuit's unique approach—which holds that some misdemeanants may retain Second Amendment rights—would not help Kanter, a felon.

### 1. Non-violent felons cannot rebut *Heller*'s presumption that they lack Second Amendment rights.

Kanter's challenge to Wis. Stat. § 941.29 fails unless non-violent felons may show that, despite their crimes, the Second Amendment grants them some rights. That is, Kanter loses unless he may "cast doubt" on the constitutionality of felon-in-possession laws, but the *Heller* court expressly said that "nothing in [its] opinion" allowed that. *Heller*, 554 U.S. at 626.

---

[2] *See also Williams*, 616 F.3d at 693 (felon-in-possession laws "may be subject to an overbreadth challenge at some point because of [their] disqualification of all felons, including those who are non-violent").

As discussed above, felons—both violent and non-violent—have categorically removed themselves from the class of "law-abiding, responsible citizens" that *Heller* recognized as enjoying Second Amendment protections. *Id.* at 625, 635. Nothing a subset of felons (or even an individual felon like Kanter) might offer can remove them from this category. Accordingly, as the Seventh Circuit recognized, many courts of appeal "have concluded that a ban on possession by felons always is constitutional." *Baer*, 636 Fed. App'x at 697 n.2 (citing *Carey*, 602 F.3d at 741 (Sixth Circuit); *Vongxay*, 594 F.3d at 1115–18 (Ninth Circuit); *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010); *United States v. Anderson*, 559 F.3d 348, 352 & n. 6 (5th Cir. 2009); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009)). This approach is the proper one, as it follows *Heller*'s directive to disallow felons from "cast[ing] doubt" on longstanding bans. *Heller*, 554 U.S. at 626.

But even courts of appeals that have given felons a chance to rebut *Heller*'s presumption have still ultimately upheld felon-in-possession laws. One important example is the Fourth Circuit's decision in *Pruess*, 703 F.3d at 246–47. There, the court considered whether a non-violent felon enjoyed Second Amendment rights, but concluded that due to his felony he "flunk[ed] the 'law-abiding responsible citizen' requirement." *Id.* at 246 (citation omitted.) It thus held that "application of the felon-in-possession prohibition to allegedly non-violent felons . . . does not violate the Second Amendment"

13

since even their "conduct lies outside the scope of the Second Amendment's protection." *Id.* at 246–247. The court further noted that "our sister circuits have consistently upheld applications of [the federal felon-in-possession ban] even to *non-violent* felons." *Id.* at 247 (collecting cases).

Likewise, though the Seventh Circuit in *Baer* noted some cases which "have assumed that [*Heller*'s] presumption is rebuttable," none of those held that any felons enjoy Second Amendment rights, either. *See Baer*, 636 F. App'x at 697 n.2. To the contrary, those cases also all upheld applications of felon-in-possession laws. *See United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014); *Schrader v. Holder*, 704 F.3d 980, 988–89 (D.C. Cir. 2013); *United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012); *United States v. Torres–Rosario*, 658 F.3d 110, 112–13 (1st Cir. 2011); *United States v. Barton*, 633 F.3d 168, 172–74 (3d Cir. 2011). Far from helping Kanter, those cases simply underscore that courts of appeals have unanimously rejected felons' constitutional challenges to laws like Wisconsin's.

Whether or not Kanter's felony involved violence, Wis. Stat. § 941.29 does not burden any of his Second Amendment rights. As a felon, he has none. Wisconsin's statute is constitutional.

### 2. The Third Circuit's decision in *Binderup* does not mean that Kanter has Second Amendment rights.

Kanter may point to the out-of-circuit decision in *Binderup v. Attorney General United States*, 836 F.3d 336 (3rd Cir. 2016) (en banc), to support an argument for Second Amendment rights. A fractured eight-to-seven majority in *Binderup* found that the federal felon-in-possession ban was unconstitutional as applied to two misdemeanants[3]—the only court of appeals decision that has done so.

But even that case cannot save Kanter's claim, since the misdemeanor crimes at issue in *Binderup* were much different than Kanter's mail fraud felony. In *Binderup*, the court found that two convicted criminals subject to the federal ban had some Second Amendment rights, since the misdemeanors they committed—consensual sex with a minor and carrying a handgun without a license—were not sufficiently "serious." *Binderup*, 836 F.3d at 348–53. Four factors supported this holding: (1) state law classified the crimes as misdemeanors; (2) the misdemeanants received no jail time; (3) the misdemeanors were non-violent; and (4) no consensus existed on the misdemeanors' seriousness. *Id.* at 351–53. Assuming this Court found this non-precedential framework persuasive, it would not help Kanter.

---

[3] The state law misdemeanors carried a maximum penalty of over two years in prison, which qualified them for the federal possession ban. *Id.* at 339–40.

Three of the four *Binderup* factors do not apply to Kanter's federal crime. First, federal law classifies mail fraud as a felony, not a misdemeanor. Violating 18 U.S.C. § 1341 carries a maximum penalty of 20 years in prison, and thus 18 U.S.C. § 3559(a)(3) classifies it as a Class C felony. Second, Kanter served over a year of prison time for his felony—no "slap on the wrist," unlike the "minor" probation and suspended sentences the misdemeanants in *Binderup* received. *See Binderup* 836 F.3d at 340, 352. Third, mail fraud is a federal felony, and so a 50-state consensus effectively exists regarding its seriousness.[4] Kanter's felony shares only one factor with the *Binderup* misdemeanors: it did not involve violence. But *Binderup* said "it is possible for non-violent crimes to be serious," *id.* at 352—and the three other factors show that Kanter's mail fraud felony was serious.

The nature of Kanter's felony further shows that it is serious enough to disqualify him from Second Amendment rights, even though it did not involve violence. Far from inadvertently tripping over a so-called regulatory offense— for example, a strict liability misdemeanor under the Food, Drug, and Cosmetic Act (21 U.S.C. §§ 331, 333) or the Clean Water Act (33 U.S.C. § 1319)—Kanter intentionally defrauded the federal government and its

---

[4] This conclusion is reinforced by the fact that two other federal statutes sometimes used to prosecute health care fraud also constitute felonies under federal law. *See* 18 U.S.C. § 1347 (ten-year maximum prison term); 18 U.S.C. § 287 (five-year maximum prison term).

taxpayers. He lied to both consumers and Medicare about whether his products complied with Medicare guidelines. (Compl. ¶ 13(g)–(k).) And those lies caused Medicare to pay hundreds of thousands of dollars for the misrepresented products. (Compl. ¶ 13(q).) Kanter's protestation that he is a "responsible, law-abiding American citizen" makes little sense when viewed against this fraudulent scheme. (Compl. ¶ 22.)

Indeed, the Seventh Circuit has recognized why violating the mail fraud statute is a serious felony:

> In a general sense the mail fraud statute is a 'broad proscription of behavior for the purposes of protecting society.' It was intended to prohibit conduct which fails to match the "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society."

*United States v. Serlin*, 538 F.2d 737, 744 (7th Cir. 1976) (citations omitted). The felony's longstanding history underscores its seriousness. Originally enacted in 1872, the statute addressed "a perceived need for federal intervention to dispel widespread fraud." Jed S. Rakoff, *The Federal Mail Fraud Statute (Part I)*, 18 Duq. L. Rev. 771, 780 (1980). It survives in substantially the same form today and has been "the 'first line of defense' against virtually every new area of fraud to develop in the United States in the past century." *Id.*; *United States v. Craig*, 573 F.2d 455, 498 (7th Cir. 1977) (noting that the statute has not changed materially since 1872).

Kanter chose not to exhibit the "moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society" when he executed his scheme to defraud Medicare. *Serlin*, 538 F.2d at 744. His felony was a serious one, and thus even under the Third Circuit's approach he cannot rebut *Heller*'s presumption that Wis. Stat. § 941.29 is constitutional as applied to him.

## II. Even if non-violent felons enjoy some Second Amendment rights, Wis. Stat. § 941.29 withstands constitutional scrutiny.

Kanter's claim fails at the first step of the Seventh Circuit's test—Wisconsin's felon-in-possession statute does not restrict activity protected by the Second Amendment. But even if Kanter could clear this hurdle, his claim would trip over the next one, since Wisconsin's statute survives heightened scrutiny. It serves the important interest of preventing firearms violence and adequately advances that end, even considering the burden it imposes on non-violent felons.

### A. Wisconsin's law satisfies intermediate scrutiny because prohibiting non-violent felons from possessing firearms reduces the risk of firearms violence.

Assuming the Second Amendment applies to Kanter, Wisconsin's law need only satisfy intermediate scrutiny to survive his challenge. The Seventh Circuit has refused to apply strict scrutiny to laws barring criminals from possessing firearms, since such an approach would be "difficult to reconcile

with *Heller*." *Skoien*, 614 F.3d at 651 n.12. That is because such bans "fall[]
on individuals who cannot be said to be exercising the core of the Second
Amendment right identified in *Heller*, i.e., 'the right of law-abiding,
responsible citizens to use arms in defense of hearth and home.'" *Schrader*,
704 F.3d at 989 (quoting *Heller*, 554 U.S. at 635).

The Seventh Circuit has thus outlined the proper test for felons' Second
Amendment challenges: "To pass constitutional muster under intermediate
scrutiny, the government has the burden of demonstrating that its objective
is an important one and that its objective is advanced by means substantially
related to that objective." *Williams*, 616 F.3d at 692. *See also Skoien*,
614 F.3d at 641–42 (requiring ban on domestic violence misdemeanants to be
"substantially related to an important governmental objective"); *Yancey*,
621 F.3d at 683 (same, for drug users).[5]

---

[5] Other courts of appeal have also applied intermediate scrutiny to various pieces of
the federal firearms possession ban. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837
F.3d 678, 2016 WL 4916936, at *10 (6th Cir. Sept. 15, 2016) (mentally ill); *United
States v. Chovan*, 735 F.3d 1127, 1141–42 (9th Cir. 2013) (domestic abusers); *United
States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010) (same); *United States v.
Reese*, 627 F.3d 792, 802–05 (10th Cir. 2010) (same); *United States v. Booker*, 644
F.3d 12, 25 (1st Cir. 2011) (same).

Wisconsin's law passes muster under that scrutiny. First, an important government interest is at stake. In enacting Wis. Stat. § 941.29, Wisconsin's legislature "determined as a matter of public safety that it was desirable to keep weapons out of the hands of individuals who had committed felonies." *Thomas*, 683 N.W.2d 497, ¶ 23. This prohibition advanced public safety because, as the legislature concluded, "felons are more likely to misuse firearms." *Coleman*, 556 N.W.2d at 705. Protecting the public from firearms violence is indisputably important, as the Seventh Circuit recognized in *Williams*. *See* 616 F.3d at 692–93. *See also Skoien*, 614 F.3d at 642 ("preventing armed mayhem[] is an important governmental objective"); *Yancey*, 621 F.3d at 683–84 ("The broad objective of § 922(g)—suppressing armed violence—is without doubt an important one . . . .").

Next, the "fit" between the statute's means and ends satisfies intermediate scrutiny. Put simply, banning non-violent felons from possessing firearms is substantially related to the goal of reducing armed violence. As the Seventh Circuit has noted, "most felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." *Yancey*, 621 F.3d at 685. *See also Kaemmerling v. Lappin*, 553 F.3d 669, 683 (D.C. Cir. 2008) ("[N]onviolent offenders not only have a higher recidivism rate than the general population, but certain groups—such as property offenders—have an even higher

20

recidivism rate than violent offenders, and a large percentage of the crimes nonviolent recidivists later commit are violent."). So-called "white-collar" criminals like Kanter are no different—even they "appear to show a high level of recidivism, with fraud and larceny offenders demonstrating only slightly lower rates of recidivism than other offenders." *Id.*[6]

When the Seventh Circuit upheld analogous bans applied to drug abusers and domestic abusers in *Yancey* and *Skoien*, heightened scrutiny was satisfied by similar connections between banning firearms possession in those groups and lowering the risk of firearms violence. *See Yancey*, 621 F.3d at 685–87; *Skoien*, 614 F.3d at 643–44. Wisconsin Stat. § 941.29 thus survives intermediate scrutiny as applied to non-violent felons, for the same reasons as in those cases.

---

[6] *See also* Bureau of Justice Statistics Fact Sheet, *Profile of Nonviolent Offenders Exiting State Prisons*, tbl. 11 (Oct. 2004) (nearly 20% of nonviolent offenders rearrested for a violent crime within three years of discharge), available at https://www.bjs.gov/content/pub/pdf/pnoesp.pdf (last accessed Nov. 11, 2016); Durose, Matthew R., Alexia D. Cooper, and Howard N. Snyder, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, Bureau of Justice Statistics Special Report, tbls. 10, 16 (April 2014) (almost 30% of property crime offenders—which includes fraud—rearrested for a violent offense within five years of release, and over 60% returned to prison within five years of release), available at https://www.bjs.gov/content/pub/pdf/rprts05p0510.pdf (last accessed Nov. 11, 2016).

## B.   Heightened scrutiny does not require considering whether Kanter will likely misuse firearms in the future.

It does not matter whether some felons barred from possessing firearms might not misuse them. Heightened scrutiny does not require that the law apply only to felons who will commit future firearms violence with 100% certainty, or even something near it. That would be impossible. Instead, it simply requires that Wisconsin's law "substantially relates" to the important goal of preventing firearms violence. This leniency distinguishes heightened scrutiny from strict scrutiny—"the fit between the challenged regulation and the asserted objective [must] be reasonable, not perfect. The regulation need not be the least restrictive means of serving the interest . . . ." *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

This means that, to prevent firearms violence, the Wisconsin legislature is "not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." *Skoien*, 614 F.3d at 641. The Seventh Circuit has thus refused to replace a categorical felon-wide ban with individualized felon-by-felon determinations. *Baer*, 636 F. App'x at 697 n.1. This principle requires denying Kanter's invitation to consider his "unique personal circumstances" (Compl. ¶ 23), since such an approach would require courts to consider case-by-case exclusions of the sort that *Skoien* and *Baer* rejected.

Other courts of appeals have also affirmed the validity of categorical bans. The D.C. Circuit in *Schrader v. Holder* reasoned that heightened scrutiny would be satisfied even if "*some* common-law misdemeanants, perhaps even [the plaintiff], may well present no such risk [of future armed violence]." 704 F.3d at 990–91. The government's showing that "disarmament of common-law misdemeanants as a class is substantially related to the important governmental objective of crime prevention" sufficed to survive a constitutional challenge. *Id.* at 991. The Fourth Circuit reached the same result in *United States v. Chapman*, holding that an "over-inclusive" ban was constitutional, even though "not every person who falls within in it would misuse a firearm." 666 F.3d 220, 231 (4th Cir. 2012). That fact "merely suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny." *Id.*

Kanter may argue that this Court should follow *Binderup*, which held that barring the misdemeanants there from possessing firearms did not survive intermediate scrutiny. *Binderup*, 836 F.3d at 353–56. But that court required evidence of safety risks specific to the misdemeanants' individual circumstances—which is exactly what the Seventh Circuit in *Skoien* said the government need not offer to survive heightened scrutiny. *See id.*; *Skoien*, 614 F.3d at 641. Instead, Wisconsin need only present sufficient reasons to

bar a particular class of individuals from possessing firearms, which it has done regarding non-violent felons.

Accordingly, under *Skoien*, *Baer*, *Schrader*, and *Chapman*, Wisconsin's statute passes intermediate scrutiny, even without evidence specific to Kanter beyond his conviction. The risks to public safety posed by non-violent felons, generally, suffice to constitutionally apply Wis. Stat. § 941.29 to him.

Further good reasons exist to find that Wis. Stat. § 941.29 survives intermediate scrutiny, even as applied to all non-violent felons. Legislatures have an institutional advantage in assessing the need for firearms regulations. As the D.C. Circuit has explained:

> In assessing this "fit" [between the challenged regulation and the asserted objective], we afford "substantial deference to the predictive judgments of Congress." In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks.

*Schrader*, 704 F.3d at 990 (citations omitted). The Supreme Court agrees that "courts must accord substantial deference to the predictive judgments" of legislatures, even when considering constitutional rights. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994). Wisconsin's legislature judged that banning both violent and non-violent felons from possessing firearms helps prevent firearms misuse, a decision neither the Supreme Court nor any court of appeals has held exceeds constitutional limits. That legislative judgment should not be disturbed.

Moreover, it would be challenging, if not impossible, to administer an effective system of as-applied challenges brought by individual felons. Under this hypothetical regime, any felon could argue they pose no danger of future firearms violence and ask a court to lift their ban through a declaratory judgment action like this one. But "such an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning." *Torres-Rosario*, 658 F.3d at 113. *See also United States v. Rehlander*, 666 F.3d 45, 50 (1st Cir. 2012) (refusing to consider individual's dangerousness, since "such a free floating [firearms] prohibition would be very hard to administer").

In sum, heightened scrutiny does not require perfection. The legislature need not divine with near-precision which felons are most likely to commit future firearms crimes and target a ban at only them. Nor must district courts entertain serial litigation by individual felons over whether they pose some risk of future firearms violence. Instead, this Court must simply decide whether the Wis. Stat. § 941.29 ban on firearms possession by non-violent felons is substantially related to the goal of reducing firearms violence. It is.

## CONCLUSION

For the foregoing reasons, the Wisconsin Attorney General respectfully requests that this Court grant Wisconsin judgment on the pleadings.

Dated this 11th day of November, 2016.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General

/s/Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

Attorneys for Defendant Brad D. Schimel

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6219 (Roth)
(608) 266-0020 (Keenan)
(608) 267-2223 (Fax)
rothct@doj.state.wi.us
keenanbp@doj.state.wi.us