UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RICKEY I. KANTER,<br><br>    Plaintiff,<br>v.<br><br>LORETTA ELIZABETH LYNCH,<br>Attorney General of the United States, and<br>BRAD SCHIMEL, Attorney General of the<br>State of Wisconsin,<br><br>    Defendants. | Civil Action No. 16-cv-01121 |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND IN OPPOSTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff admits that he engaged in the "lamentable conduct" of defrauding taxpayers of hundreds of thousands of dollars. (Pl. Mem. at 2.) This conduct resulted in Plaintiff's conviction on the charge of felony mail fraud, a sentence of over a year in prison, and his payment of $27 million in a civil settlement. Nevertheless, Plaintiff contends that he is the "ideal candidate" to overturn the federal prohibition on the possession of firearms by felons, 18 U.S.C. § 922(g)(1), a statute which has stood for over fifty years. (Pl. Mem. at 13.) The application of Second Amendment jurisprudence in this circuit is fatal to Plaintiff's challenge.

The Second Amendment would not have guaranteed a felon such as Plaintiff the right to keep and bear arms when the Constitution was written. Without a constitutional right, the Constitution affords Plaintiff no remedy here. Further, even if Plaintiff enjoyed the protections of the Second Amendment, the longstanding federal bar on firearm possession by felons should be upheld. The statute is substantially related to the objective of promoting public safety and

1

preventing crime. Under intermediate scrutiny, which provides substantial deference to Congress in crafting sensitive policy judgments, all that is required is a substantial relationship between the goal of public safety and the prohibition on firearm possession by felons. Such a relationship has been found repeatedly by the Seventh Circuit. Plaintiff's claim is therefore without merit and his suit should be dismissed.[1]

## ARGUMENT

I. The Two-Step Framework Employed by the Seventh Circuit Controls Plaintiff's Challenge

The Seventh Circuit has consistently invoked a two-step framework to evaluate Second Amendment challenges. As the court recently explained in *Baer v. Lynch*, "when evaluating a Second Amendment claim, we first determine if the challenged restriction covers conduct falling within the scope of the Amendment's protection. If it does, then the restriction must satisfy some level of heightened scrutiny . . . ." 636 F. App'x 695, 698 (7th Cir. 2016). However, Plaintiff fails to address the question of whether § 922(g)(1) affects Second Amendment conduct, and appears simply to assume that felons are included within the protections of the Second Amendment. (Pl. Mem. at 8.) Accordingly, Plaintiff avers that all "felon-in-possession laws" are subject to "constitutional scrutiny," rendering step one of the above analysis a nullity. (Pl. Mem. 8, 10.)

Plaintiff's proposed framework is without support. It is axiomatic that a Second Amendment challenge cannot survive where there are no Second Amendment rights at stake, a point which has not been lost on the Seventh Circuit. *See Ezell v. City of Chicago*, 651 F.3d 684,

---

[1] If this Court were to deny Defendant's Motion to Dismiss, Defendant reserves the right to seek discovery pursuant to Rule 56(d), prior to the time that the Court rules on Plaintiff's Motion for Summary Judgment.

2

702–03 (7th Cir. 2011) ("[I]f the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment . . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review."); *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) (finding that undocumented aliens had rights under the Second Amendment, before holding that § 922(g)(5) satisfied intermediate scrutiny). Even the primary case cited by Plaintiff in support of his argument, *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 685–86 (6th Cir. 2016) agrees that where a law "regulates activity outside the scope of the Second Amendment . . . the activity is unprotected and the law is not subjected to further constitutional scrutiny." To be sure, the Seventh Circuit has in certain cases not needed to engage in the first step of the analysis, *see Baer*, 636 F. App'x at 698, because it was clear that the firearm prohibition satisfied intermediate scrutiny. The same analysis applies here. If this Court determines either that § 922(g)(1) regulates conduct outside the scope of the Second Amendment, or that the law satisfies intermediate scrutiny, then Plaintiff's claim fails.

II.     Plaintiff's Claim Should be Dismissed at Step One Because Plaintiff is Excluded from Second Amendment Protections

Given this well-established framework, the Government's Motion to Dismiss explained in detail under step one how felons were historically viewed as outside the ambit of the Second Amendment's protection, such that the longstanding federal firearms prohibition, § 922(g)(1), does not affect conduct covered by the Amendment. (Gov't Mem. at 6-9.) Plaintiff puts forth no contradictory position, declining to directly contest that felons were excluded from the Second Amendment when it was written, or that such exclusion would preclude the instant constitutional

3

challenge.[2]

Concerning the critical question of the Second Amendment's coverage, Plaintiff offers only a slippery-slope argument, stating that Defendant proposes a "circular theory by which any legislative act that might violate the Second Amendment is self-constitutionalizing," and providing a hypothetical bar based on "jaywalking" as an example. (Pl. Mem. at 11.) Plaintiff's arguments concerning hypothetical legislation are misplaced, as "[a] person to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present." *U.S. v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010).

In any event, Defendant has made the straightforward point that when the Constitution was drafted it was understood that those convicted of felonies did not enjoy the core right of the Second Amendment, the defensive use of arms by "law-abiding, responsible citizens." *Dist. of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). Plaintiff is not law-abiding, and was convicted of a serious federal felony. As a consequence, Plaintiff would not have been regarded as falling within the scope of the Second Amendment's protection when the Constitution was written, and accordingly the Constitution provides him with no right to possess a firearm. *See Berron v. Illinois Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 847 (7th Cir. 2016) (noting that while "the Second Amendment establishes personal rights, the Court [in *Heller*] observed that only law-abiding persons enjoy these rights, even at home"). Plaintiff offers no argument or evidence to dispute this fact, and as a result this Court should dismiss his claim at

---

[2] The closest Plaintiff comes to making such an argument is claiming that certain courts have concluded that felon prohibitions are presumptively lawful because "[they] presumptively satisfy some form of heightened means-end scrutiny," rather than because "they do not burden persons within the ambit of the Second Amendment as historically understood." (Pl. Mem. at 10-11.) Nowhere does Plaintiff directly aver that felons were in fact covered by the Second Amendment at the time it was written, nor does he offer any evidence to support such a claim.

4

the first step of the analysis.

III.    Even if the Second Amendment was Implicated by Plaintiff's Claim, this Case Should be Dismissed at Step Two because § 922(g)(1) Satisfies Intermediate Scrutiny

Even were this Court to determine that the Second Amendment applies to Plaintiff, this case nonetheless should be dismissed because § 922(g)(1) satisfies intermediate scrutiny. Plaintiff concedes that "[t]he Seventh Circuit uses a framework of intermediate scrutiny to determine whether a law burdening Second Amendment rights passes constitutional muster." (Pl. Mem. at 12.) Intermediate scrutiny requires that § 922(g)(1) advance an important government interest "by means substantially related to that objective." *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010). Plaintiff further concedes that the stated Government objective of § 922(g)(1), "'combating serious crime and protecting public safety' . . . [is] important." (Pl. Mem. at 14.) Plaintiff is therefore left to contest only whether there is a sufficient relationship between the goal of protecting public safety and barring firearms possession by felons.[3]

As the Court of Appeals held in *Skoien*, "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these

---

[3] Plaintiff notes a rumination by the Seventh Circuit that, perhaps, "§ 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent." *See United States v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010). Importantly, the *Williams* court did *not* hold that the statute is unconstitutional as applied to non-violent felons, instead concluding that it passed intermediate scrutiny and therefore withstood the plaintiff's challenge in that case. *See id*. The Seventh Circuit, moreover, has upheld § 922(g) in the face of a host of challenges, including those brought by persons with convictions for non-violent felony drug offenses, *see United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010), persons with convictions for misdemeanor crimes of violence, *see United States v. Skoien*, 614 F.3d 638, 639 (7th Cir. 2010), and convicted felons who assert that they have been rehabilitated, *see Baer v. Lynch*, 636 F. App'x 695, 696-99 (7th Cir. 2016). The passing reference in dicta in *Williams* musing that an as-applied challenge to § 922(g) could one day succeed does not compel a favorable outcome for Plaintiff here.

5

limits be established by evidence presented in court." 614 F.3d at 641; *see also United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) (same). Since Congress is empowered to enact "categorical disqualifications," intermediate scrutiny in this case requires simply a substantial relationship between preventing serious crime and the prohibition on the possession of firearms by felons such as Plaintiff. *Skoien*, 614 F.3d at 641. Indeed, Plaintiff was convicted of felony mail fraud, rendering application of § 922(g)(1) to Plaintiff reasonably related to Congress' intent to "reduce the likelihood that [firearms] fall into the hands of the lawless." *See* S. Rep No. 89-1866, at 1 (1966). There is thus a clear and substantial relationship between the congressional objective of preventing serious crime and barring felons from possessing firearms.

This analysis satisfies the Government's marginal burden here. Plaintiff does not and cannot contest the Seventh Circuit's repeated holdings that "the state can prevail with less evidence when . . . guns are forbidden to a class of persons who present a higher than average risk of misusing a gun. And empirical evidence of a public safety concern can be dispensed with altogether when the ban is limited to obviously dangerous persons such as felons and the mentally ill." *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012) (internal citation omitted); *see also Ezell*, 651 F.3d at 708 (finding that "laws restricting activity lying closer to the margins of the Second Amendment right . . . may be more easily justified"). Despite these clear admonishments, Plaintiff attempts to use statistics to show that Congress could have legislated "more effective[ly]," (Pl. Mem. at 18) and that as a consequence the duly enacted federal prohibition is unconstitutional.

Even assuming the relevance of Plaintiff's cited statistics, they serve only to undermine his claim. Plaintiff relies almost exclusively on one study, which states that approximately "half of white-collar offenders will be arrested for any type of subsequent offense, and less than a

6

quarter of those offenders will be arrested for a violent offense." (Pl. Mem. at 16.) Put another way, even pursuant to Plaintiff's preferred data, around 12 percent of white-collar offenders will be subsequently arrested for a violent offense.[4] This arrest rate for violent crimes vastly exceeds that of the general population, which is a small fraction of one percent.[5] Even if the Government were required to set forth empirical benefits for § 922(g)(1), it is clear that Plaintiff's data alone would suffice. Such statistics further show that there is a substantial relationship between preventing crime and keeping firearms out of the hands of felons, and even white-collar felons specifically.

Perhaps in light of these numbers, Plaintiff declines to argue that the relative likelihood of future crime renders § 922(g)(1) unconstitutional as applied, nor does he set forth any standard by which this Court could find such a risk sufficiently unlikely. There is good reason for Plaintiff's reticence: "[i]n the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)). Congress here made a valid policy judgment that firearms should be denied to felons, a population which poses a significant risk of future criminal conduct.

IV.     Intermediate Scrutiny Does not Require that § 922(g)(1) be Narrowly Tailored

Yet Plaintiff disagrees with the judgment of Congress, and attempts to modify the

---

[4] In its Motion, Defendant also noted studies showing, respectively, that 28.5% of prisoners incarcerated for a property offense and 19.9% of prisoners convicted of a nonviolent offense will be subsequently arrested for a violent crime. (Def. Mem. at 14.)

[5] This estimate is derived from the FBI's 2015 national arrest data, which found 505,681 arrests for violent crimes, out of a population of approximately 321 million people. *See* FBI, "2015 Crime in the United States: Persons Arrested," *available at* https://ucr.fbi.gov/crime-in-the-u.s/2015/crime-in-the-u.s.-2015/persons-arrested/persons-arrested (visited January 3, 2017).

7

intermediate scrutiny standard to advance his claim. Plaintiff argues that, in addition to the clear intermediate scrutiny test articulated by the Seventh Circuit, the law must also be narrowly tailored. (Pl. Mem. at 17) (arguing that the federal prohibition is both "under- and over-inclusive"). In support of this alleged tailoring requirement, Plaintiff cites only one district court case, *Clarkson v. Town of Florence*, 198 F. Supp. 2d 997 (E.D. Wis. 2002), which did not concern firearms regulation, but rather content-based laws regulating the time, place or manner of adult entertainment. This unique test has not been imported into the Second Amendment context, and a narrow tailoring requirement has not been referenced once by the Seventh Circuit in its numerous decisions applying intermediate scrutiny and dismissing § 922(g) challenges.

In fact, the Seventh Circuit has reiterated that strict scrutiny "means that the law must be narrowly tailored to serve a compelling governmental interest," a test not found in the intermediate scrutiny analysis. *Ezell*, 651 F.3d at 707; *see also Culp v. Madigan*, 840 F.3d 400, 407 (7th Cir. 2016) (Manion, J. dissenting) (urging that only when a statute "curtails the fundamental right of law-abiding citizens to carry a weapon for self-defense," is a type of narrow tailoring applicable); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261 (2d Cir. 2015), *cert. denied sub nom. Shew v. Malloy*, 136 S. Ct. 2486 (2016) ("To survive intermediate scrutiny, the 'fit between the challenged regulation [and the government interest] need only be substantial, not perfect.' Unlike strict scrutiny analysis, we need not ensure that the statute is 'narrowly tailored' or the 'least restrictive available means to serve the stated governmental interest.'") (quoting *Kachalsky*, 701 F.3d at 97). In sum, narrow tailoring is not a requirement of the intermediate scrutiny standard, which the Seventh Circuit has consistently used for challenges to § 922(g).

Ultimately, Plaintiff's challenge reduces to a contention which erroneously relies on

narrow tailoring: "because the government could adopt a narrower (and, here, likely more effective) regulation that advances its objectives, it cannot constitutionally enforce [the statute] at issue here." (Pl. Mem. at 18.) Yet Plaintiff fails to explain precisely what narrower prohibition would be acceptable. He states only that the law would be "more efficacious by disarming only violent and repeat offenders (those being the categories of offenders most likely to commit violent acts in the future)." (*Id*.) This general proposal both imposes an improper tailoring standard, as noted above, and lacks empirical support.

First, the Government is not limited under the Second Amendment to disarming only offenders who are "the *most* likely to commit violent acts," as Plaintiff seems to suggest, and certainly no court has so held. (*Id*.) (emphasis added) Second, Plaintiff again offers no threshold at which Congress or this Court should find that the risk of future violence is acceptable such that certain felons must be permitted to possess firearms, contrary to the intent of § 922(g)(1).[6] Instead, intermediate scrutiny defers to Congress in devising prohibitions that are substantially related to the goal of preventing crime. As demonstrated above, Seventh Circuit precedent and Plaintiff's statistics alone establish that there is a substantial relationship between the end sought and the means employed, such that § 922(g)(1) clearly satisfies intermediate scrutiny.

Plaintiff closes his argument by citing two cases which are both largely distinguishable

---

[6] In fact, the history of 18 U.S.C. § 925(c), cited favorably by Plaintiff, illuminates the difficulty in locating such a standard. That provision originally permitted the Bureau of Alcohol, Tobacco and Firearms to grant relief from firearms prohibitions where applicants were not likely to be dangerous in the future. While Plaintiff notes that this administrative mechanism has been defunded, he omits the reason why. Congress specifically found that "[a]fter ATF agents spend many hours investigating a particular applicant for relief, there is no way to know with any certainty whether the applicant is still a danger to public safety. Needless to say, it is a very difficult task. Thus, officials are now forced to make these decisions knowing that a mistake could have devastating consequences for innocent citizens." H.R. REP. 102-618, at 13-14 (1992). In light of such significant obstacles, Congress determined that the $3.75 million and 40 man-years required to implement § 925(c) should be expended elsewhere. *Id.*

9

from the instant matter, and support Defendant's position to the extent they are relevant here. Plaintiff first cites the sole appellate decision finding § 922(g)(1) unconstitutional as applied, *Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336 (3d Cir. 2016), *petition for cert. filed*, No. 16-847 (January 5, 2017). Plaintiff invokes *Binderup* for the proposition that there is an insufficient relationship between the prevention of crime and the denial of firearms to nonviolent felons. Defendant maintains that the *Binderup* plurality decision was fundamentally flawed and incorrectly decided. But even putting aside Defendant's position, that case concerned challengers who were convicted of misdemeanors under state law and who served no prison time, in stark contrast to Plaintiff's federal felony crime and prison sentence exceeding one year. And as Judge Ambro found in the opinion announcing the judgment in *Binderup*, if a challenge to § 922(g)(1) was brought by a plaintiff convicted of a felony, "th[at] individual's burden would be extraordinarily high—and perhaps even insurmountable." *Id*. at 353 n.6. Judge Ambro further stated that "persons who have committed serious crimes forfeit the right to possess firearms . . . ." *Id*. at 349. Plaintiff, having been convicted of a serious federal felony, would likely have his claim dismissed even under the standard applied in *Binderup*.

Finally, Plaintiff cites *United States v. Lane*, 252 F.3d 905 (7th Cir. 2001), arguing that due to a lower risk of violent crime, nonviolent criminals should not be subject to felon dispossession laws. However, that case concerned an entirely different issue: whether being a felon in possession of a firearm is itself a crime of violence. *Id*. at 906. Judge Posner answered the question in the negative, noting that "[a] crime that increases the likelihood of a crime of violence need not itself be a crime of violence." *Id.* at 907. Defendant does not contend here that the act of possession in § 922(g)(1) itself is violent, but rather that the statute reasonably serves Congress's goal to prevent other crimes in the future. Indeed, in *United States v. Yancey*,

10

the Seventh Circuit cited *Lane* for the proposition that "most felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." 621 F.3d 681, 686 (7th Cir. 2010). Thus, as found by the Seventh Circuit, § 922(g)(1) serves the important purpose of protecting public safety by barring firearm possession by felons. *See id.* at 684 ("We have already concluded that barring felons from firearm possession is constitutional."). The federal firearms prohibition accordingly satisfies intermediate scrutiny, and Plaintiff's claim should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion to Dismiss, and deny Plaintiff's Motion for Summary Judgment.

Dated: January 9, 2017                     Respectfully submitted,

                                            BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney General

                                            JOHN R. TYLER
                                            Assistant Branch Director

                                            */s/ Michael L. Drezner*
                                            MICHAEL L. DREZNER
                                            VA Bar #: 83836
                                            Trial Attorney, U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, NW
                                            Washington, DC 20530
                                            Telephone: (202) 514-4505
                                            Facsimile: (202) 616-8470
                                            *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2017, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

                                             */s/ Michael L. Drezner*
                                             Michael L. Drezner