UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICKEY I. KANTER,

            Plaintiff,

v.

LORETTA ELIZABETH LYNCH,
Attorney General of the United States,
and
BRAD SCHIMEL,
Attorney General of the State of Wisconsin,

            Defendants.

Case No. 16-CV-1121

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

      In defending the dispossession laws that categorically disarm every single person convicted of any felony, 18 United States Code Section 922(g)(1) and Wisconsin Statutes section 941.29(1m), Defendants Lynch and Schimel primarily rely on their position that felons have no Second Amendment rights at all, and therefore this Court need not put the government through its paces to show that felon dispossession laws pass heightened scrutiny. Under the Defendants' position, there is no set of circumstances under which *any* convicted felon could ever own a firearm.

      Kanter contends that the state and federal felon dispossession laws are overbroad *as applied to him*, a generally law-abiding individual who committed a non-violent offense for which he has served his sentence and paid his fine. However proper felon dispossession laws might generally be as applied to other felons, enforcing the dispossession laws against Kanter on the basis of his non-violent felony conviction violates his Second Amendment rights.

All parties agree that the material facts here are undisputed.[1]  Because Kanter is entitled to judgment as a matter of law, this Court should grant his Motion for Summary Judgment.

**ARGUMENT**

**I. Kanter Has a Fundamental Second Amendment Right to Possess a Firearm.**

Resolving Second Amendment cases "usually entails two inquiries." *Ezell v. City of Chi.*, Nos. 14-3312, 14-3322, slip op. at 6 (7th Cir. Jan. 18, 2017) (hereinafter, "*Ezell II*").  "The threshold question is whether the regulated activity falls within the scope of the Second Amendment.  This is a textual and historical inquiry; if the government can establish that the challenged law regulates activity falling outside the scope of the right as originally understood, then the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* (internal citation and quotations omitted).  "If the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights."  *Id.* at 7.

In their briefs opposing Kanter's Motion for Summary Judgment, both the federal and state government Defendants again focus on the first inquiry in the analysis; they argue that Kanter is categorically precluded from bringing a constitutional challenge that forces the

---

[1] Concurrently with this reply brief, Kanter has filed a Declaration providing evidence supporting Proposed Material Facts 1–3 from his Statement of Proposed Material Facts.  Defendant Schimel objected to these three facts on the grounds that Kanter had "not supplied a declaration under Federal Rule of Civil Procedure 56(c)(4) that would be admissible in evidence to establish" those facts.  (Schimel Resp. to Pl.'s Statement of Proposed Materials Facts at 1–4.)  In any event, all parties, including both Schimel and Lynch, agree that there are no disputed material facts in this case.  (Schimel Resp. to Pl.'s Statement of Proposed Material Facts at 1 (stating that facts "about the plaintiff's individual circumstances beyond his criminal conviction [which Schimel does not dispute] would be immaterial to whether the Second Amendment allows Wisconsin to disarm him."); Lynch Resp. to Pl.'s Statement of Proposed Material Facts at 1 (stating that "the only fact that is material in this case is that plaintiff pled guilty to mail fraud, *see* Compl. Ex. A., and that fact is undisputed. The remaining facts asserted in Plaintiff's Statement of Proposed Material Facts are immaterial under Defendant's legal theory.").)

governments to prove their felon dispossession laws pass scrutiny simply because he has been convicted of a felony.  (Lynch Opp. Br. at 3–4; Schimel Opp. Br. at 2–6.).[2]  Lynch refers the Court to her Brief in Support of her Motion to Dismiss, in which she argues that because the English government and colonial societies of the eighteenth century disarmed citizens who committed certain crimes or who were deemed a danger to the public, this Court should find that the Second Amendment right of an individual to possess a gun does not include anyone who has ever been convicted of a felony.  (Lynch Opp. Br. at 3; Lynch Brief in Support of her Motion to Dismiss at 7–8.)

    This argument is flawed for two reasons.  First, as Kanter explained in the brief supporting his Motion for Summary Judgment, the Seventh Circuit has already found that a challenge to a restriction on gun ownership by a felon requires that the government satisfy heightened scrutiny—the second step of the constitutional analysis.  *See United States v. Williams*, 616 F.3d 685, 692–93 (7th Cir. 2010) (applying intermediate scrutiny to Section 922(g)(1) when challenged by a felon).  In another recent case, the Seventh Circuit explained that when faced with Second Amendment challenges, this circuit has not, like some other circuits have, focused on whether "felons historically were outside the scope of the Second Amendment's protection," but "instead have focused on whether § 922(g)(1) survives intermediate scrutiny."  *Baer v. Lynch*, 636 F. App'x 695, 698 (7th Cir. 2016).  Seventh Circuit precedent accepts that an individual's right to own a firearm is protected by the Second Amendment, and any regulation burdening that right (including felon dispossession laws) must withstand heightened constitutional scrutiny.

---

[2] Throughout this brief, Kanter cites to the Defendants' Responses to his Motion for Summary Judgment, which they filed on January 9, 2017, at ECF 30 and ECF 32, as "Lynch Opp. Br." and "Schimel Opp. Br."  Citations to other briefs previously filed in this case will include the full title of such brief.

Second, the Defendants' historical data about the regulation of gun ownership by those convicted of crimes is, in fact, *consistent* with Kanter's argument that although the government may permissibly (in compliance with the dictates of the Second Amendment) disarm *some* felons, such a regulation can be unconstitutional as applied to others. In other words, Kanter does not question the permissibility of regulating the possession of firearms by some felons; he challenges the extraordinary breadth of the state and federal governments' categorical and lifetime bans on the possession of firearms by any person convicted of any felony.

Just this week, the Seventh Circuit issued a decision in a Second Amendment case explaining that historical laws regulating possession of firearms by certain categories of citizens do not justify a blanket exclusion of those citizens from Second Amendment rights. In *Ezell II*, the Seventh Circuit reversed its earlier ruling that upheld certain age restrictions on the possession of firearms in the City of Chicago. In so doing, the Court provided guidance that proves dispositive here:

> The City's primary defense of the age-18 limitation is to argue that minors have no Second Amendment rights *at all*. To support this sweeping claim, the City points to some nineteenth-century state laws prohibiting firearm possession by minors and prohibiting firearm sales to minors. Laws of this nature might properly inform the question whether minors have a general right, protected by the Second Amendment, to purchase or possess firearms. But they have little relevance to the issue at hand. The plaintiffs do not question the permissibility of regulating the purchase and possession of firearms by minors. They challenge only the extraordinary breadth of the City's age restriction. Banning anyone under age 18 from entering a firing range prevents older adolescents and teens from accessing adult-supervised firearm instruction in the controlled setting of a range. There's zero historical evidence that firearm training for this age group is categorically unprotected. At least the City hasn't identified any, and we've found none ourselves.

*Ezell II*, Nos. 14-3312, 14-3322, slip op. at 15.

4

Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 4 of 10   Document 34

Neither of the Defendants have cited evidence that firearm possession by a non-violent person convicted of mail fraud based on allegations that his company sold diabetic shoe inserts that were not Medicare-compliant is categorically unprotected by the Second Amendment. Kanter is a citizen who desires to exercise his fundamental Second Amendment right to possess a firearm. To constitutionally enforce their dispossession laws against Kanter, the Defendants must show that their laws pass heightened scrutiny. *Williams*, 616 F.3d at 692 ("[T]he government does not get a free pass simply because Congress has established a 'categorical ban'; it still must prove that the ban is constitutional, a mandate that flows from *Heller* itself. *Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge. Therefore, putting the government through its paces in proving the constitutionality of § 922(g)(1) is only proper."). As explained in Kanter's prior briefing and below, the Defendants cannot make such a showing.

## II. The Felon Dispossession Laws at Issue Here, As Applied to Kanter, Cannot Pass Intermediate Scrutiny.

Intermediate scrutiny places on the *government* the burden of demonstrating that its important objective—in this case, preventing violent crime—"is advanced by means substantially related to that objective." *Williams*, 616 F.3d at 692. The Defendants put forth two arguments in support of their contention that the state and felon dispossession laws at issue here survive intermediate scrutiny, neither of which compel the conclusion they desire.

First, the Defendants argue that because a small number of felons will recidivate by committing a crime of violence, the government meets its goal of preventing violent crime by disarming Kanter, a non-violent person convicted of one crime in his lifetime. This argument amounts to a constructive adoption of the Defendants' primary argument that all felons are

categorically banned from exercising their Second Amendment rights. In other words, the Defendants essentially ask the Court to reduce the burden of intermediate scrutiny entirely by accepting, as sufficient to confer a lifetime firearm ban, evidence that only a small percentage of white collar offenders will commit violent crimes in the future.

Second, the Defendants argue that laws burdening Second Amendment rights need not be narrowly tailored to survive intermediate scrutiny. While the Seventh Circuit is still developing its jurisprudence regarding the appropriate standard for Second Amendment challenges, this much is sure: heightened scrutiny in the Second Amendment context requires that the government perform at least some form of tailoring of its regulation to minimize the burden on fundamental rights. *See Ezell II*, Nos. 14-3312, 14-3322, slip op. at 15.

Neither of the Defendants' arguments is sufficient to show that the felon dispossession laws applied to Kanter satisfy heightened scrutiny.

### A. Disarming Kanter, a Non-Violent, One-Time, White-Collar Felon, Does Not Substantially Advance the Government's Objective of Reducing Violent Crime.

Although it is the government's burden to demonstrate that its important objective of preventing violent crime is in fact advanced by means substantially related to that objective with the challenged law, *Williams*, 616 F.3d at 692, the Defendants primarily attack Kanter's evidence as insufficient to show that their regulations do *not* advance their interest, thereby effectively flipping the burden. Nonetheless, the studies Kanter cites in his prior briefing, and other studies cited by the Defendants, demonstrate the lack of empirical data showing that dispossession laws categorically denying any felon the right to own a firearm are *substantially* related to the government's objective of preventing violent crime.

In his prior briefing, Kanter cited to scholarship related to recidivism among white-collar

6

Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 6 of 10   Document 34

offenders demonstrating that such offenders are significantly less likely than other criminals to commit future crimes at all, and of those white-collar offenders who do recidivate, a very small percentage of their future crimes involve violence. (Pl.'s Summ. Judg. Br. at 15–18 citing David Weisburd, Elin Waring, & Ellen F. Chayet, *White-Collar Crime and Criminal Careers* (2001).) In Weisburd's study, only about half of white-collar offenders were arrested for any type of subsequent offense, and less than a quarter of *those* offenders were arrested for a violent offense. (Pl.'s Summ. Judg. Br. at 16 citing Weisburd at 45.)

The Defendants argue that these and similar statistics are sufficient to justify the enforcement of dispossession laws against Kanter because they show that the arrest rate for violent crimes among white-collar felons exceeds that of the general population. (Lynch Opp. Br. at 7; Schimel Opp. Br. at 7–8.). But they do not provide support for their position that reliance on recidivism rates alone (especially those that show violent recidivism among white collar offenders is significantly lower as compared to other offenders) are sufficient to justify their regulations. For example, Schimel cites to *Skoien* for the proposition that a 17% recidivism rate is sufficient to justify a categorical ban on domestic abusers' possession of firearms (Schimel Opp. Br. at 9.) Not only is that rate higher than the recidivism rate found in Weisburd's study for white collar offenders, but the *Skoien* court also relied on other evidence that "within three years of conviction 48% of domestic abusers 'suspended' their abusive conduct—which means that the other 52% did not, and that even the 48% may have committed new crimes within three years after conviction." *United States v. Skoien*, 614 F.3d 638, 644 (7th Cir. 2010). The *Skoien* court also relied on other types of evidence showing a connection between domestic assault and violence: "Domestic assaults with firearms are approximately twelve times more likely to end in the victim's death than are assaults by knives or fists. … The presence of a gun in the home of a

7
Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 7 of 10   Document 34

convicted domestic abuser is strongly and independently associated with an increased risk of homicide. … [and] [a]pproximately 8% of officers' fatalities from illegal conduct during 1999 through 2008 arose from attempts to control domestic disturbances."
*Skoien*, 614 F.3d at 643–44 (internal citations omitted).

Further, this case is not like *Yancey,* also cited by Schimel, where the Seventh Circuit upheld the disarmament of habitual drug users because people in that category "are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms," and "ample academic research confirms the connection between drug use and violent crime." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010). First, as with *Skoien*, the court relied on more than recidivism rates in finding an adequate means-ends fit. But more importantly, the *Yancey* court highlighted that the restriction on drug users possessing firearms is "far less" onerous than those affecting felons because, "unlike those who have been convicted of a felony … and so face a lifetime ban, an unlawful drug user like Yancey could regain his right to possess a firearm simply by ending his drug abuse." *Id.* at 686–87.

The restriction on Kanter's Second Amendment right to possess a firearm could not be more onerous, and can therefore be justified only with the requisite "heightened" showing of an ends-means fit with the government's objective. The Defendants have not shown that disarming Kanter, a non-violent, one-time, white-collar offender, is substantially related to their objective of preventing violent crime.

### B.  Felon Dispossession Laws Are Not Sufficiently Tailored to Advance the Government's Objective Without Overburdening a Fundamental Right.

In response to Kanter's argument that felon dispossession laws are both over-inclusive (in that they disarm felons who are not statistically likely to engage in violent misuse of firearms in the future) and under-inclusive (in that they do *not* disarm some criminals and repeat offenders

8
Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 8 of 10   Document 34

whose offenses are violent and who are statistically more likely to engage in violent misuse of firearms in the future), the Defendants argue that intermediate scrutiny does not impose any obligation on the government to narrowly tailor its regulation. (Lynch Opp. Br. at 7–11; Schimel Opp. Br. at 10–14.)

Again here, the Seventh Circuit's recent decision in *Ezell II* is instructive: the form of heightened scrutiny applied in cases involving Second Amendment challenges requires that the government tailor its restrictions to minimize the burden on a fundamental right while still advancing its objective. *Ezell II*, Nos. 14-3312, 14-3322, slip op. at 15. In *Ezell II*, the court held, among other things, that Chicago's ban on possession of firearms by persons under the age of 18 was not sufficiently tailored in light of the enormous burden it placed on an entire category of citizens. The court explained that the city's "public-safety interests can be addressed by a more closely tailored age restriction—one that does not completely extinguish the right of older adolescents and teens in Chicago to learn how to shoot in an appropriately supervised setting at a firing range. As presently written, however, the City has failed to adequately justify its broad age restriction." *Id.* at 18-19.

Similarly here, and as Kanter argued in his prior briefing, the state and federal governments could tailor their dispossession laws to advance the objective of preventing violent crime while lessening the burden on the Second Amendment rights of those citizens not likely to misuse firearms in the future. Lynch admonishes Kanter for "fail[ing] to explain precisely what narrower prohibition would be acceptable" and for advancing a proposal that "lacks empirical support." (Lynch Opp. Br. at 9.) But this is simply not true: as Kanter has noted, the governments could tailor their disarmament laws to cover those who frequently offend and those whose offenses are violent. Empirical data proves that frequency of offending and commission of violent offenses are better indictors of future violence than simply whether a person has been

9

Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 9 of 10   Document 34

convicted of any felony, including non-violent mail fraud. For example, Weisburd's study shows that "those with fewer arrests seldom had violent crimes in their criminal histories," and the US Sentencing Commission study shows that "offenders sentenced under fraud statutes were overall the least likely to recidivate." (Pl.'s Summ. Judg. Br. at 18.)

Intermediate scrutiny requires that the Defendants prove a substantial and tailored relationship between the felon dispossession laws applied to Kanter and their stated objective of preventing violent crime. Precluding a non-violent felon with only one crime on his record from owning a gun does not advance, especially substantially, the government's important goal of protecting the public's safety. The felon dispossession laws are therefore unconstitutional as applied to Kanter.

## CONCLUSION

For the reasons stated herein and in his prior briefing, Kanter respectfully requests that this Court grant his Motion for Summary Judgment.

Dated this 20th day of January, 2017.

    s/Mark A. Cameli
Mark A. Cameli
WI State Bar ID No. 1012040
mcameli@reinhartlaw.com
Kate E. Maternowski
WI State Bar No. 1091126
kmaternowski@reinhartlaw.com
Attorneys for Rickey I. Kanter
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone: 414-298-1000
Facsimile: 414-298-8097

35476268

10
Case 2:16-cv-01121-WCG   Filed 01/20/17   Page 10 of 10   Document 34