UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICKEY I. KANTER,

        Plaintiff,

v.                                                            Case No. 16-C-1121

JEFFERSON B. SESSIONS III,[1]
Attorney General of the United States, and
BRAD D. SCHIMEL,
Attorney General of the State of Wisconsin,

        Defendants.

## DECISION AND ORDER

Plaintiff, Rickey Kanter, filed the instant action against defendants Jefferson Sessions and Brad Schimel, in their capacities as Attorney General for the United States and the State of Wisconsin, respectively, challenging the statutes that prohibit felons from possessing firearms, 18 U.S.C. § 922(g)(1) and Wis. Stat. § 941.29. He asserts that these statutes, as applied to him, an individual convicted of felony mail fraud, violate his Second Amendment right to bear arms. This matter, recently reassigned to this court, comes before the court on Sessions' motion to dismiss, Schimel's motion for judgment on the pleadings, and Kanter's motion for summary judgment. For the following reasons, Sessions' motion to dismiss and Schimel's motion for judgment on the pleadings will be granted and Kanter's motion for summary judgment will be denied.

---

[1] Jefferson B. Sessions III is now the Attorney General of the United States. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Attorney General Jefferson B. Sessions III is substituted for Loretta Elizabeth Lynch as a party in this action.

**BACKGROUND**

Kanter was the owner, operator, and CEO of Dr. Comfort, a therapeutic shoe insert company. In July 2004, Medicare determined Dr. Comfort's heat-moldable inserts failed to meet certain standards and would no longer pay for this product. Dr. Comfort disregarded this warning and continued to sell the inserts to a podiatrist using a commercial interstate carrier and then subsequently billed Medicare for the non-compliant inserts. From January to March 2006, Dr. Comfort received $375,000 in payment from Medicare for these inserts. The government uncovered his fraud in March 2006, and he was charged with one count of mail fraud under 18 U.S.C. § 1341.

Kanter pled guilty to the charge on May 24, 2011. The court imposed a sentence of twelve months and one day and ordered Kanter to pay a $50,000 fine as well as a $100 assessment. *Id.* Kanter now desires to possess a firearm for legal purposes, but 18 U.S.C. § 922(g)(1) and Wis. Stat. § 941.29 prohibit him from doing so. As a result, Kanter asserts these statutes violate his Second Amendment right to bear arms.

**LEGAL STANDARD**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

Rule 12(c) permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A motion for judgment on the pleadings, pursuant to Rule 12(c), is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

If this were a facial challenge to the federal and state laws prohibiting possession of firearms by felons, it would undoubtedly fail, at least at this level. In *United States v. Price*, the court performed a minimum analysis finding § 922(g)(1) to be constitutional because it was bound by previous precedent finding the same. 328 F.3d 958, 961 (7th Cir. 2003) (citing *United States v. Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d 1288 (7th Cir. 1974); *Gillespie v. City of Indianapolis*, 185 F.3d 693 (7th Cir. 1999); *United States v. Hemmings*, 258 F.3d 587 (7th Cir. 2001)); *see also United States v. Davis*, 406 F. App'x 52, 54 (7th Cir. 2010) (observing that a challenge to the constitutionality of § 922 is "frivolous" and foreclosed by the Supreme Court's decision in *McDonald*). Those cases (except for *Davis*) found § 922(g)(1) to be constitutional

3

because the Second Amendment does not bestow an individual right to possess firearms. The *Price* court declined to revisit that position. *Id.*

The Seventh Circuit's holding that the Second Amendment did not confer an individual right to bear arms was abrogated in *District of Columbia v. Heller*. 554 U.S. 570 (2008). But even though the Supreme Court held in *Heller* that "the Second Amendment conferred an individual right to keep and bear arms," *id.* at 595, that holding did not disturb the Seventh Circuit precedent cited above. In *Heller*, a District of Columbia special police officer sought to register a handgun to keep in his home. *Id.* at 574. The District refused his application for a registration certificate based on its local ordinance making it a crime to carry an unregistered firearm and prohibiting the registration of handguns. After reviewing the history of the Second Amendment, the Court concluded the District's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id.* at 635. It reasoned that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* The Court noted, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited . . . nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 626. This position was reaffirmed in *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). In other words, Heller does not call into question "longstanding prohibitions on the possession of firearms by felons." This circuit's rejection of a facial challenge to § 922(g) therefore remains the law of this circuit which, of course, is binding on this court.

4

But Kanter's challenge is not a facial one. Kanter challenges the constitutionality of the federal and state dispossession laws, 18 U.S.C. § 922(g)(1) and Wis. Stat. § 941.29, as applied to him. Citing *United States v. Williams*, Kanter notes that the Seventh Circuit has suggested that "§ 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent" and argues that these statutes should not apply to his personal circumstances as a non-violent felon. 616 F.3d 685, 693 (7th Cir. 2010).

The Seventh Circuit has established a two-part test for evaluating a Second Amendment claim. A court must "first determine if the challenged restriction covers conduct falling within the scope of the Amendment's protection. If it does, then the restriction must satisfy some level of heightened scrutiny, depending on whether the conduct in question falls at the core or at the periphery of the Amendment's protection." *Baer v. Lynch*, 636 F. App'x 695, 698 (7th Cir. 2016) (citing *Horsley v. Trame*, 808 F.3d 1126, 1130–31 (7th Cir. 2015); *Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir. 2011); *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015); *United States v. Skoien*, 614 F.3d 638, 641–42 (7th Cir. 2010)).

The government defendants argue that Kanter cannot satisfy the first prong of this test because as a felon, he is not covered by the Second Amendment's protection. The Seventh Circuit has acknowledged that "statutory prohibitions on the possession of weapons by some persons are proper . . . and [are] part of the original meaning" of the Second Amendment. *Skoien*, 614 F.3d at 640. It has also noted that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) (quoting *Vongxay*, 594 F.3d at 1118); *see also* Don B. Kates, Jr., *The Second Amendment: A*

5

*Dialogue*, 49 LAW & CONTEMP. PROBS. 143, 146 (1986) (noting that "the right to bear arms does not preclude laws disarming the unvirtuous citizens"); Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 MICH. L. REV. 204, 266 (1983) ("Felons simply did not fall within the benefits of the common law right to possess arms."); David Yassky, *The Second Amendment: Structure, History, and Constitutional Change*, 99 MICH. L. REV. 588, 626 (2000) ("The average citizen whom the Founders wished to see armed was a man of republican virtue."); Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 TENN. L. REV. 461, 480 (1995) (noting that felons "were excluded from the right to bear arms" because they were "deemed incapable of virtue"). This authority suggests that the right to bear arms protected by the Second Amendment was never intended to apply to felons in the first place, rendering any further consideration of Kanter's argument unnecessary.

Nevertheless, the Seventh Circuit has refrained from deciding whether the scope of the Second Amendment's protections at the time of the founding included felons. *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) ("[W]e refrain now from making a determination [about whether convicted felons fall outside the scope of the Second Amendment's protections] based on contradictory views"); *see also Yancey*, 621 F.3d at 684–85 (observing that "scholars continue to debate the evidence of historical precedent for prohibiting criminals from carrying arms"). Here, the court need not decide whether Kanter is entitled to Second Amendment protection because the federal and Wisconsin dispossession laws pass constitutional muster in any event.

The parties do not dispute that the court should apply intermediate scrutiny to Kanter's challenge. Indeed, "[i]f all that was required to overcome the right to keep and bear arms was rational basis, the Second Amendment would be redundant with the separate constitutional

6

prohibitions on irrational laws, and would have no effect." *Heller*, 554 U.S. at 628 n.27. Though the Seventh Circuit has noted "the precise test applicable to all challenges to gun restrictions" remains undetermined, it has applied intermediate scrutiny to analyze as-applied challenges to § 922(g)(1). *See Skoien*, 614 F.3d at 641; *Williams*, 616 F.3d at 692; *Yancey*, 621 F.3d at 683. The court will therefore apply intermediate scrutiny in this case. To satisfy intermediate scrutiny, "the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *Williams*, 616 F.3d at 692. The Seventh Circuit has explained that "some form of strong showing" is required to meet this standard. *Skoien*, 614 F.3d at 641.

Congress enacted § 922(g)(1) to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small v. United States*, 544 U.S. 385, 393–94 (2005) (citations omitted); *see also Yancey*, 621 F.3d at 683 ("Congress enacted the exclusions in § 922(g) to keep guns out of the hands of presumptively risky people." (citations omitted)). The objectives of Wis. Stat. § 941.29 are the same. The Wisconsin legislature "determined as a matter of public safety that it was desirable to keep weapons out of the hands of individuals who had committed felonies." *State v. Thomas*, 2004 WI App 115, ¶ 23, 274 Wis. 2d 513, 683 N.W.2d 497. These objectives, are without a doubt, important.

Kanter asserts that the government defendants cannot show a substantial link between their objective of preventing violent crime and the prohibition of Kanter, a non-violent person with no violent criminal history, from possessing a firearm. Pl.'s Br. at 15, ECF No. 28. He argues, in particular, that these dispossession statutes are overbroad because they apply to both violent and

non-violent felons. Yet, Congress is empowered to establish certain "categorical disqualifications" and "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Skoien*, 614 F.3d at 641. Moreover, even though Kanter engaged in a non-violent felony, the fact that he committed any felony, a serious violation of the criminal law, places him within that category of persons which Congress and the Wisconsin legislature found are more likely to abuse firearms. The dispossession statutes recognize that all felons, violent or not, have clearly disrespected important laws in the past. As the Seventh Circuit has observed, "most felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." *Yancey*, 621 F.3d at 685 (citing *United States v. Lane*, 252 F.3d 905, 906 (7th Cir. 2001)). "Irrespective of whether [the] offense was violent in nature, a felon has shown manifest disregard for the rights of others. He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens." *United States v. Emerson*, 270 F.3d 203, 260 (5th Cir. 2001). The bright line categorical approach used in § 922(g)(1) and § 941.29 allows for uniform application and ease of administration as well as further deterrence of the commission of another crime. All of these reasons provide strong justification to conclude that the application of the federal and state dispossession statutes to Kanter are substantially related to the governments' important interests in preventing gun violence. In sum, 18 U.S.C. § 922(g) and Wis. Stat. § 941.29 do not violate the Second Amendment as it applies to Kanter, a convicted felon.

## CONCLUSION

For the foregoing reasons, Sessions' motion to dismiss (ECF No. 24) and Schimel's motion for judgment on the pleadings (ECF No. 25) are **GRANTED** and Kanter's motion for summary

judgment (ECF No. 27) is **DENIED**. Kanter's complaint is dismissed. The Clerk is directed to enter judgment accordingly.

Dated this   29th   day of December, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
